STARKEY SHARP v. LINDA R. SHARP

No. 931DC776

(Filed 18 October 1994)

1. **Divorce and Separation § 155 (NCI4th)— equitable distribution—post-separation appreciation of marital property—consideration by trial court**

In an equitable distribution action, there was no merit to defendant's contention that the trial court failed to consider post-separation appreciation of marital property in the hands of plaintiff where the record reflected that the referee thoroughly considered the post-separation appreciation and depreciation of marital assets in his report and recommended an unequal distribution to the trial court, and the court, after reviewing the referee's report and considering the income, property, and liabilities of each party at the time the division of the property was to become effective, adjusted the distribution to give defendant an even greater share.

**Am Jur 2d, Divorce and Separation §§ 915 et seq.**

**Divorce: equitable distribution doctrine. 41 ALR4th 481.**

**Divorce: excessiveness or adequacy of trial court's property award—modern cases. 56 ALR4th 12.**

2. **Trial § 151 (NCI4th)— stipulated value of land—stipulations binding**

Where the parties entered into stipulations as to the value of real property on the date of the hearing before the referee, and defendant did not seek to set aside her stipulations and present evidence to the trial court as to the value of the property two years later at the date of distribution, defendant was bound by her stipulation.

**Am Jur 2d, Stipulations §§ 13 et seq.**

3. **Divorce and Separation § 135 (NCI4th)— equitable distribution—value of subdivision**

The evidence was sufficient to support the trial court's finding in an equitable distribution action as to the value of a residential subdivision where that value was based on an appraiser's

report and testimony showing that the method used to arrive at the valuation reasonably approximated the net value of the business interest.

**Am Jur 2d, Divorce and Separation §§ 937 et seq.**

**4. Divorce and Separation § 155 (NCI4th)— equitable distribution—no inconsistent findings by trial court**

The trial court's findings in an equitable distribution action that the proceeds from the sale of lots in a residential subdivision were both income from the partnership which developed the property and liquidation of an asset were not inconsistent with each other.

**Am Jur 2d, Divorce and Separation §§ 915 et seq.**

**5. Divorce and Separation § 156 (NCI4th)— equitable distribution—no waste of marital assets by plaintiff**

The evidence was sufficient to support the referee's finding in an equitable distribution action that there was no evidence of any pre-separation or post-separation waste of marital assets by plaintiff.

**Am Jur 2d, Divorce and Separation § 929.**

**Spouse's dissipation of marital assets prior to divorce as factor in divorce court's determination of property division. 41 ALR4th 416.**

**6. Divorce and Separation § 135 (NCI4th)— equitable distribution—value of wetland lots**

The trial court in an equitable distribution action did not err in finding that two wetland lots owned by a partnership in which plaintiff held 25% interest had no value, though there was conflicting evidence as to their value.

**Am Jur 2d, Divorce and Separtion §§ 937 et seq.**

**7. Divorce and Separation § 140 (NCI4th)— law partnership—method of valuation proper**

The trial court did not err in applying an average of methodologies to value plaintiff's partnership interest in his law firm; furthermore, defendant could not complain about this method of valuation where she did not argue in her brief an alternative methodology of an alternative valuation that should have been used, or cite any portion of the record containing evidence of an

alternative methodology or valuation, or cite evidence in support of her contention that the appraiser's figure did not approximate the fair market value of the partnership.

**`Am Jur 2d, Divorce and Separation §§ 944-946.**

**Evaluation of interest in law firm or medical partner-ship for purposes of division of property in divorce pro-ceedings. 74 ALR3d 621.**

8. **Divorce and Separation § 140 (NCI4th)— valuation of law partnership—proper method used—requirements for chal-lenging methodology**

The trial court did not err by finding as fact that the deduc-tion of taxes at a 40% rate in the capitalization of earnings and capitalization of excess earnings analysis of the value of plain-tiff's law partnership was properly treated as an expense of the practice; furthermore, when the trial court has accepted an expert's methodology, a party desiring to challenge the methodol-ogy must produce other testimony challenging that methodology and set out the prejudicial error which resulted from its use.

**Am Jur 2d, Divorce and Separation §§ 944-946.**

**Evaluation of interest in law firm or medical partner-ship for purposes of division of property in divorce pro-ceedings. 74 ALR3d 621.**

9. **Divorce and Separation § 156 (NCI4th)— equitable distri-bution—decline in value of business—failure to find plain-tiff's poor management—no error**

The trial court in an equitable distribution action did not err in failing to find as a fact that plaintiff's poor management prac-tices of a restaurant were directly responsible for the decline in the value of the business after the date of separation, since evi-dence existed in the record contrary to defendant's contention.

**Am Jur 2d, Divorce and Separation § 929.**

**Spouse's dissipation of marital assets prior to divorce as factor in divorce court's determination of property divi-sion. 41 ALR4th 416.**

10. **Divorce and Separation § 152 (NCI4th)— equitable distri-bution—contribution of each spouse during law school**

The trial court in an equitable distribution action sufficiently considered as a distributive factor the financial contributions of

SHARP v. SHARP

[116 N.C. App. 513 (1994)]

each spouse to the marriage during the time plaintiff was in law school.

**Am Jur 2d, Divorce and Separation §§ 915 et seq.**

**Divorce: equitable distribution doctrine. 41 ALR4th 481.**

11. **Divorce and Separation § 528 (NCI4th)— expert witness fee—award proper**

The trial court did not err in ordering defendant to pay $8,000 and plaintiff to pay $19,912 in expert witness fees, since the fees were reasonable; the consent order entered by the referee stating that the parties would not be ordered to pay more than $21,000 in expert witness fees did not deprive the court of its authority to award reasonable compensation to an expert witness appointed by consent of the parties; and the court's finding that the bulk of the fees was a direct result of plaintiff's delay in providing information to the appraiser was supported by the evidence.

**Am Jur 2d, Divorce and Separation § 617.**

**Excessiveness or adequacy of attorneys' fees in domestic relations cases. 17 ALR5th 366.**

12. **Divorce and Separation § 528 (NCI4th)— referee fee— equal payment required—no error**

The trial court in an equitable distribution action did not err in ordering the parties to bear equal responsibility for the referee fee of $13,319.92. N.C.G.S. § 1A-1, Rule 53(d).

**Am Jur 2d, Divorce and Separation § 617.**

Appeals by plaintiff and defendant from judgment and orders entered 19 April 1993 by Judge A. Elizabeth Keever in Dare County District Court. Heard in the Court of Appeals 15 April 1994.

Plaintiff and defendant were married on 19 July 1972. On 23 January 1984, plaintiff and defendant separated, and on 1 July 1985, plaintiff husband filed a complaint for absolute divorce from defendant wife. On 5 August 1985, defendant wife filed an answer and counterclaim for an equitable distribution of the marital assets pursuant to N.C. Gen. Stat. §§ 50-20, 50-21. The trial court severed the claim for equitable distribution and in 1987 entered an order granting plaintiff an absolute divorce.

SHARP v. SHARP

[116 N.C. App. 513 (1994)]

On 15 August 1988, by consent of the parties, the trial court entered an order of reference appointing Jack P. Gulley, attorney at law, as referee "to hear and determine all of the issues involved in this action." Subsequently, on 1 July 1992, Mr. Gulley filed his referee report. Thereafter, defendant filed her objections and exceptions to the report.

On 19 April 1993, Judge A. Elizabeth Keever entered a judgment on the equitable distribution claim adopting in part and amending in part the referee's report. In this judgment, Judge Keever determined the net marital estate at the date of separation to be $444,514 and concluded that an unequal division of the marital assets would be just and proper. Subsequently, Judge Keever awarded defendant 56% of the marital estate, which included an in-kind award of $49,601 and a distributive award of $200,000 from plaintiff, and awarded plaintiff 44% of the marital estate which included an in-kind award of $394,913 and the liability of the distributive award to plaintiff.

Judge Keever also entered an order regarding payment of expert witness fees in which Judge Keever ordered plaintiff to pay the sum of $19,912 and defendant to pay the sum of $8,000 to the firm of Lowrimore, Warwick & Company for their expert appraisal of seven business entities with regard to the equitable distribution claim. Judge Keever also entered an order requiring the parties to equally divide the payment of the referee fee of $13,319.92 to be paid by the parties to Mr. Gulley.

From the judgment of equitable distribution and the order regarding the allocation of the expert witness fee, plaintiff appeals. From the judgment of equitable distribution, the order regarding the allocation of the expert witness fee, and the order regarding payment of the referee fee, defendant appeals.

*Sharp, Michael, Outten & Graham, by Steven D. Michael, for plaintiff-appellant/appellee.*

*Womble Carlyle Sandridge & Rice, by Carole S. Gailor and Marilyn R. Forbes, for defendant-appellant/appellee.*

ORR, Judge.

At the outset, we note that plaintiff has abandoned his assignments of error with regard to the order for equitable distribution pursuant to N.C.R. App. P. 28(b)(5).

## I.

## DEFENDANT'S APPEAL FROM
## ORDER OF EQUITABLE DISTRIBUTION

[1]  First, defendant assigns as error the trial court's failure to consider the post separation appreciation of marital property in the hands of plaintiff. Because we find that the trial court correctly considered these factors in its award, we find no error.

In an action for equitable distribution, "[t]he trial judge must consider those distributional factors raised by the evidence." *Truesdale v. Truesdale*, 89 N.C. App. 445, 450, 366 S.E.2d 512, 516 (1988). N.C. Gen. Stat. § 50-20(c) (1987 & Supp.) lists these distributional factors. N.C. Gen. Stat. § 50-20(c)(1),(11a), and (12) state:

> (c) There shall be an equal division by using net value of marital property unless the court determines that an equal division is not equitable. If the court determines that an equal division is not equitable, the court shall divide the marital property equitably. Factors the court shall consider under this subsection are as follows:

> (1) The income, property, and liabilities of each party at the time the division of property is to become effective;

> . . .

> (11a) Acts of either party to maintain, preserve, develop, or expand; or to waste, neglect, devalue or convert such marital property, during the period after separation of the parties and before the time of distribution; and

> (12) Any other factor which the court finds to be just and proper.

In the present case, defendant specifically contends that the trial court failed to consider income plaintiff received after the date of separation but before the date of distribution from a real estate partnership, Foreman, Roebuck, Small & Sharp ("FRS&S"), in which plaintiff was a 25% partner, and income plaintiff received when he withdrew from his law firm, Kellogg, White, Evans & Sharp, in November 1985 from the sale of personalty, payments on notes receivable, and from distribution of a share of the partnership assets as distributive factors in its equitable distribution.

Our review of the judgment shows, however, that the trial court considered the post-separation appreciation and depreciation of the

assets regarding the income plaintiff received from FRS&S. The judgment states:

> 14. DISTRIBUTION ISSUES. FINDING #12. (p. 64) Any other factor which the Court finds to be just and proper.
>
> Subsequent to the separation of the parties, the Plaintiff maintained active oversight of the marital interests in Foreman, Robuck [sic], Small & Sharp and in FRISSCO, Inc. [a corporation formed primarily for the purposes of building and operating a restaurant. During the period following the separation, the Keeper[']s Hill Subdivision was primarily developed [by FRS&S] and the Plaintiff received the marital share of all of the profits from that venture. The value of this interest significantly decreased from the date of separation until the date of hearing as lots were developed and sold. The Plaintiff was actively involved in the development of this subdivision and received no compensation for that except for his proportionate share of the profits. He was also actively involved in the management of FRISSCO, Inc. and the restaurant that was built as part of that venture. The character of FRISSCO, Inc. also significantly changed from the date of separation until the date of the hearing and many of the assets were transferred to FRISSCO Partnership. Throughout the period following the date of separation, the Plaintiff had the advantage of retaining any profits from said venture and the benefit of any losses.

Further, although the trial court did not make specific findings of fact regarding plaintiff receiving the assets from his law firm in 1985, the trial court did find that the expert's evaluation of plaintiff's interest in the law partnership of Kellogg, White, Evans, & Sharp, "took into account the components of the practice including its fixed assets, cash, furniture, equipment, and other supplies, other assets including accounts receivable . . ., the value of work in progress, its goodwill, and its liabilities."

Following these findings, the trial court concluded, "[b]ased on a consideration of all of the foregoing, the court has determined and finds as a fact that an unequal division of the marital assets would be equitable . . . ." Based on this conclusion, the court awarded defendant 56% of the marital estate and plaintiff 44% of the marital estate.

Subsequently, defendant argues that the trial court's distribution of 56% of the total marital estate to defendant "has no rational rela-

tionship to the demonstrated magnitude of the post-separation economic loss incurred by the [d]efendant." In support of this argument, defendant contends that the distribution of marital property and the distributive award to defendant "should reflect her equitable share of the cash, benefits or appreciation realized by the [p]laintiff . . . and the additional investment value of a fair rate of return on those assets."

In North Carolina, trial courts are permitted "to distribute the marital property in any ratio deemed equitable through the award of adjustive credits reflecting the court's consideration of post-separation appreciation as a distributional factor." *Truesdale*, 89 N.C. App. at 450, 366 S.E.2d at 516. In making an award in an equitable distribution action, the trial court is vested with wide discretion, and appellate review of the equitable distribution award "is limited to a determination of whether there was a clear abuse of discretion." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

> A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason. . . . A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.

*Id.* (citation omitted).

In the case *sub judice*, the record reflects that the referee thoroughly considered the post-separation appreciation and depreciation of marital assets in his report and recommended to the trial court that approximately 51.5% of the marital estate be distributed to defendant. After reviewing the referee's report, the trial court modified the report and determined that defendant was entitled to a distribution of 56% of the marital estate. Subsequently, the trial court awarded defendant $49,601 in marital assets and a distributive award of $200,000.

In making this award, the trial court also considered the fact that "[b]ased on the 1983 Federal and State tax liability of the parties, the [d]efendant owes to the [p]laintiff.the sum of Two Thousand Eight Hundred Two and No/100 Dollars ($2,802.00)[.]" Further, the trial court considered the income, property, and liabilities to each party at the time the division of the property was to become effective pursuant to N.C. Gen. Stat. § 50-20(c)(1) and found:

Both parties have considerable separate property as of the date of distribution of the property. Plaintiff's income from his law practice in 1990 was One Hundred Twenty-nine thousand and No/100 Dollars ($129,000.00) and Defendant's income from her CPA practice in 1990 was Fifty-one Thousand and No/100 Dollars ($51,000.00). The value of Plaintiff's interest in his present law firm and the value of the Defendant's CPA practice have increased significantly since the date of separation.

Although defendant is entitled to have the trial court consider the post-separation appreciation of marital property and the effect the appreciation had on the parties, defendant is not necessarily entitled to a distribution of this post-separation appreciation. *See Truesdale*, 89 N.C. App. at 448-50, 366 S.E.2d at 514-15; *See also Gum v. Gum*, 107 N.C. App. 734, 738, 421 S.E.2d 788, 790 (1992). Based on our review of the judgment, and in light of our limited scope of review, we do not find that the trial court's award was a "clear abuse of discretion." Accordingly, we find no error.

## II.

**[2]** Next, defendant contends that the trial court erred in accepting the parties' stipulations as to the value of certain real property on the date of the hearing before the referee. Defendant argues that because the parties entered into these stipulations in 1991 and the trial court did not enter its judgment until 1993, these values did not properly represent the value at the date of distribution and the trial court should have made separate findings of fact as to the value of this property on the date of distribution.

" 'Once a stipulation is made, a party is bound by it and he may not thereafter take an inconsistent position.' " *Moore v. Richard West Farms, Inc.*, 113 N.C. App. 137, 141, 437 S.E.2d 529, 531 (1993) (citation omitted). Further, in North Carolina,

"[a] party to a stipulation who desires to have it set aside should seek to do so by some direct proceeding, and, ordinarily, such relief may or should be sought by a motion to set aside the stipulation in the court in which the action is pending, on notice to the opposite party." . . . "Application to set aside a stipulation must be seasonably made; delay in asking for relief may defeat the right thereto."

*Id.* at 141-42, 437 S.E.2d at 531-32 (citation omitted).

In the present case, defendant did not seek to set aside her stipulations and present evidence to the trial court as to the value of the property at the date of distribution. Defendant is, therefore, bound by her stipulations. Accordingly, we find no merit to defendant's second assignment of error.

### III.

[3] Defendant also contends that the trial court erred in finding that the Keeper's Hill Subdivision, a residential subdivision developed by FRS&S, had a value of $635,000 on the date of separation. We disagree.

In an action for equitable distribution, "[a]fter classifying the property as marital, separate or mixed, the court must determine the *net* value of the property. Net value has been defined as market value, if any, less the amount of any encumbrance serving to offset or reduce the market value." *Nix v. Nix*, 80 N.C. App. 110, 113, 341 S.E.2d 116, 118 (1986) (emphasis added); *See also Smith v. Smith*, 111 N.C. App. 460, 470, 433 S.E.2d 196, 202, *disc. review denied*, 335 N.C. 177, 438 S.E.2d 202 (1993), *rev'd in part on other grounds*, 336 N.C. 575, 444 S.E.2d 420 (1994); N.C. Gen. Stat. § 50-20(c). Further,

> [i]n reviewing the trial court's valuation of an ongoing business or an interest therein for purposes of equitable distribution, the task of the appellate court is to determine whether the approach used by the trial court reasonably approximates the net value of the business interest. . . . If it does, the valuation will not be disturbed.

*Smith*, 111 N.C. App. at 486, 433 S.E.2d at 212 (citations omitted).

In the present case, the trial court appointed H. Glenn James, a commercial real estate appraiser and consultant, to appraise Keeper's Hill Subdivision as of 23 January 1984, the date the parties separated. On this date, Keeper's Hill consisted of forty-seven residential lots. Mr. James subsequently appraised Keeper's Hill Subdivision on this date at a value of $635,000. Our review of Mr. James' testimony as well as his appraisal report shows that in valuing this subdivision, he calculated the market value of the subdivision using a discounted cash flow analysis method.

The following is reflected in Mr. James' appraisal report:

> For this appraisal assignment, the appraisers have assumed that the market value estimate is based on a cash sale or typical

financing which could be secured through a commercial lending institution.

Based upon a stipulated agreement of the parties and upon direction provided by their counsel, we have utilized actual sales data for lots sold within the subdivision, based upon settlement statements and other data supplied by the clients. However, we have made appropriate adjustments for lots sold which did not sell on an arm's-length basis. Further, we have made additional adjustments for appropriate costs (sales commissions and closing fees) for certain lots which sold that did not include such normal charges in their settlement statements.

Further, Mr. James testified that he also accounted for real estate tax assessments, land tax, and transfer and revenue stamps. The following is reflected in Mr. James' testimony:

So for sales in each quarter I have deducted the ordinary and customary expenses of administering the subdivision and have arrived at a net cash flow figure for each and every quarter: I have then discounted the net cash flow for each quarter in order to derive a present value or present worth of each cash flow.

Based on this evidence, the referee found that "the value of Six Hundred Thirty-Five Thousand and No/100 Dollars . . . placed on Keeper's Hill Subdivision by Mr. James was a fair and accurate market value of the property as of the date of separation." Subsequently, the trial court adopted this finding. Our review of the evidence shows that the method used to arrive at this valuation "reasonably approximates the net value of the business interest", and we find no abuse of discretion.

## IV.

[4] Next, defendant contends that the trial court erred in making inconsistent findings of fact regarding the proceeds from Keeper's Hill Subdivision. In support of this contention, defendant argues that the trial court found that the proceeds from the sale of lots in Keeper's Hill were both income from the partnership and liquidation of an asset and that these findings are inconsistent with each other. We disagree.

Defendant's assignment of error refers to the findings of fact number 9 and 12 under the "DISTRIBUTION ISSUES" The trial court adopted the referee's finding of fact found in DISTRIBUTION ISSUE number 9 that

[a]t the time of the separation of the parties, the marital property was extremely nonliquid. At the present time because of the elapsed time the largest assets, to-wit; the interest in Foreman, Robuck [sic], Small & Sharp has greatly decreased because it was liquidated.

The trial court modified the referee's finding of fact found in DISTRIBUTION ISSUE number 12 and found that

[d]uring the period following the separation, the Keeper[']s Hill Subdivision was primarily developed and the Plaintiff received the marital share of all of the profits from that venture. The value of this interest significantly decreased from the date of separation until the date of hearing as lots were developed and sold. The Plaintiff was actively involved in the development of this subdivision and received no compensation for that except for his proportionate share of the profits.

Our review of the record shows sufficient evidence to support these two findings, and we do not agree with defendant's contention that these findings are inconsistent.

## V.

[5] Defendant also contends that "the trial court erred by finding that [p]laintiff[']s preseparation and post-separation waste of marital assets was a distributive factor." We disagree.

Our review of the trial court's order shows that the trial court adopted the referee's finding that "[t]here was no evidence of any waste during the period of separation." This finding is binding and conclusive " ' "if supported by any competent evidence . . . ." ' " Little v. Little, 9 N.C. App. 361, 365, 176 S.E.2d 521, 523-24 (1970) (citation omitted). Our review of the record shows sufficient evidence to support this finding. Defendant's argument is without merit.

## VI.

[6] Next, defendant contends that the "trial court erred by finding as a fact that the two wetland lots owned by FRS&S had no fair market value as of the date of separation or as of the date the distribution of property was to become effective." We disagree.

The record shows that defendant was qualified as an expert in "the area of valuation methodology as applied to real estate businesses and partnerships." Subsequently, defendant testified that in her opinion the twenty-five percent interest in the two wetland lots

had a value of $1,500. Mr. James, the expert appointed by the trial court as an expert to appraise various properties owned by the parties, testified, however, that in his opinion the wetlands were "not buildable" and from a residential selling standpoint, had no value. In Mr. James' report to the court, he stated that the wetlands are "considered to have little or no value." Additionally, plaintiff testified that in his opinion the wetlands had no value.

"Where the court finds the facts, . . . the duty of resolving conflicts in the evidence is for the court." *Little*, 9 N.C. App. at 366, 176 S.E.2d at 524. Accordingly, we find competent evidence to support the trial court's finding as to the valuation of the wetlands.

## VII.

Defendant also contends that the trial court erred in failing to find as a fact "that the partners in FRS&S were compensated for their capital contributions by distribution to each of lots" and to find that plaintiff was not a credible witness. In support of her contention that evidence existed from which the trial court should have found the partners in FRS&S were compensated by distributions of lots, defendant cites to page 140-41 of the 5 August 1991 transcript. The testimony contained on these two pages is that of defendant concerning the value of the wetlands and the following testimony:

Q. Now, in addition to the sale of the residential lots, there were other parcels that were sold, [by FRS&S] correct?

A. Yes.

Q. Now, we mentioned earlier the seven-acre parcel which . . . is next to the 1.6 acres, correct?

A. Correct.

Q. To whom was that property sold?

A. It was sold to Eastern Savings and Loan.

Q. All right. Do you know when it was sold?

A. 1986.

Q. What was the sale price?

A. $990,000.

Q. Now, to who [sic] was the 1.6 acres conveyed?

A. It was conveyed to Frissco, Inc.

Q. And when was it conveyed?

A. December 29th of '83.

Q. Do you know the terms under which the property was conveyed from Foreman, Roebuck, Small & Sharp to Frissco, Inc. in 1983?

A. For the amount of the release fee due to Mr. Dietrich on that piece.

Q. Which was?

A. $40,000.

Q. Now, to your knowledge were the proceeds of the sales that we have—you have just described—distributed to the partners of Foreman, Roebuck, Small and Sharp?

A. Yes.

Our review of this evidence does not show support for defendant's contention. Accordingly, because "appellant has the burden of showing error," we find no merit to defendant's argument as presented to this Court. *See Gum*, 107 N.C. App. at 738, 421 S.E.2d at 791.

Further, on the issue of the trial court's failure to find plaintiff was not a credible witness, "issues of witness credibility are to be resolved by the trial judge." *Smithwick v. Frame*, 62 N.C. App. 387, 392, 303 S.E.2d 217, 221 (1983).

> The trial judge is both judge and jury, and he has the duty to pass upon the credibility of the witnesses who testify. He decides what weight shall be given to the testimony and the reasonable inferences to be drawn therefrom. The appellate court cannot substitute itself for the trial judge in this task.

*General Specialties Co., Inc. v. Nello L. Teer Co.*, 41 N.C. App. 273, 275, 254 S.E.2d 658, 660 (1979). We find no basis in the law to support defendant's contention that the trial court was required to find that plaintiff was not a credible witness.

## VIII.

[7] Defendant also contends that the trial court erred in applying an averaging of methodologies to value plaintiff's partnership interest in

SHARP v. SHARP

[116 N.C. App. 513 (1994)]

his law firm. As stated numerous times by this Court, "there is no single best approach to valuing a professional association or practice, and various approaches or valuation methods can and have been used." *Poore v. Poore*, 75 N.C. App. 414, 419, 331 S.E.2d 266, 270, *disc. review denied*, 314 N.C. 543, 335 S.E.2d 316 (1985). Further,

> [t]he valuation of each individual practice will depend on its particular facts and circumstances. . . . In valuing a professional practice, a court should consider the following components of the practice: (a) its fixed assets including cash, furniture, equipment, and other supplies; (b) its other assets including accounts receivable and the value of work in progress; (c) its goodwill, if any; and (d) its liabilities.

*Id.* (citation omitted). "The task of a reviewing court on appeal is to determine whether the approach used by the trial court reasonably approximated the net value of the partnership interest." *Id.*; *See Weaver v. Weaver*, 72 N.C. App. 409, 412, 324 S.E.2d 915, 917-18 (1985).

In the present case, the trial court found,

> [t]he court appointed expert, David Miller, made an evaluation of the [p]laintiff's interest in the partnership. Mr. Miller in approaching his evaluation took into account the components of the practice including its fixed assets, cash, furniture, equipment, and other supplies, other assets including accounts receivable (including the value of the Coppoch fee), the value of work in progress, its goodwill, and its liabilities. He used a combination of the following methods in determining his valuation: capitalization of earnings, capitalization of excess earnings, buy-out evaluation based on the Partnership Agreement and annual fee multiplier. He assigned the greatest weight to the capitalization of excess earnings method.

Further, the trial court found that the "use of this evaluation method [was] appropriate for the facts in this case." Based on this method, the trial court assigned the marital interest in the law firm a value of $63,000.

On appeal, defendant argues that "[i]t was error for the court to adopt the methodology of the appraiser by taking an average of differing valuation methods[.]" In support of her argument, defendant cites to Revenue Ruling 59-60. We do not find this Revenue Ruling persuasive in this case. Defendant has not argued, and we have not

SHARP v. SHARP

[116 N.C. App. 513 (1994)]

found any cases in North Carolina holding that valuation of a law partnership based on an averaging of methodologies approach is erroneous.

Further, defendant does not argue in her brief an alternative methodology or an alternative valuation that should be used or cite to any portion of the record containing evidence of an alternative methodology or valuation or evidence in support of her contention that Mr. Miller's appraisal did not approximate the fair market value of the partnership.

(a) **Function.** The function of all briefs [to this Court] is to define clearly the questions presented to [this Court] and to present the arguments and authorities upon which the parties rely in support of their respective positions thereon. Review is limited to questions so presented in the several briefs. . . .

(b) **Content of Appellant's Brief** . . .

. . .

(5) . . . The body of the argument [in the brief] shall contain citations of the authorities upon which the appellant relies. Evidence or other proceedings material to the question presented may be narrated or quoted in the body of the argument, with appropriate reference to the record on appeal or the transcript of proceedings, or the exhibits.

N.C.R. App. P. 28(a), (b)(5). As stated previously, the burden of showing error is always on the party asserting the error. *Patton v. Patton*, 78 N.C. App. 247, 256, 337 S.E.2d 607, 613 (1985), *disc. review denied*, 316 N.C. 195, 341 S.E.2d 585, *rev'd in part on other grounds*, 318 N.C. 404, 348 S.E.2d 593 (1986) (citing *Gregory v. Lynch*, 271 N.C. 198, 203, 155 S.E.2d 488, 492 (1967)); *See also Gum*, 107 N.C. App. at 738, 421 S.E.2d at 791.

Accordingly, we find that the defendant has failed to produce any evidence to show that the methodology adopted by the trial court did not reasonably approximate the net value of the partnership interest, and we decline to reverse the trial court's valuation absent a showing of error.

## IX.

[8] Next, defendant contends that the trial court erred by finding as fact that the deduction of taxes at a 40% rate in the capitalization of

earnings and capitalization of excess earnings analysis of the value of plaintiff's law partnership was properly treated as an expense of the practice. Based on the facts of this case, we find no error.

The expert was assigned the task of determining "what was the net value of plaintiff's interest in the law partnership, Kellogg, White, Evans, & Sharp, as of the date of separation?" There is no simple or straightforward method, nor any single approach from which the answer to such a complex question can be resolved, particularly under the facts of this case. The deduction of taxes in the capitalization of earnings was just one facet of the expert's effort to resolve this question. Absent a clear showing of legal error in utilizing that approach, this Court is not inclined to second guess the expert and the trial court, which accepted and approved this determination.

We also note that where the trial court has accepted an expert's methodology, a party desiring to challenge the methodology must produce other testimony challenging that methodology and set out the prejudicial error which resulted from its use. Simply arguing that the expert "did it wrong" is an inadequate approach to resolving such complex issues, and if there is evidence challenging or contradicting the expert's methodology, then it is for the trial court to decide which method prevails.

## X.

[9] Next, defendant argues that the trial court erred by failing to find as a fact that plaintiff's poor management practices of the FRISSCO restaurant, a restaurant owned by FRISSCO, Inc., a corporation incorporated by plaintiff on 7 November 1983, were directly responsible for the decline in the value of the business after the date of separation. We disagree.

In support of her contention, defendant cites to the appraiser's valuation of FRISSCO, Inc. that "a lack of professional management led to poor control over daily operations. The restaurant began to develop a negative reputation as a result of less than quality food and poor service. These factors caused a negative cumulative effect on the financial results for 1990." Plaintiff testified, however, that

> [t]here [were] a number of reasons why the restaurant had problems in [1990]. In terms of our management, we had a manager who was the same manager who had been with us since 1984. He was a man named Charlie Griffin and although he's a good individual and knows the restaurant business very well, over a period

of time he became more and more inattentive to the operations. So we had management, but the management was in a poor situation there. . . . One of the factors in our losses, we believe, was poor control over the operations. He wasn't there a lot.

. . .

He went golfing. He had problems in supervising the people by not being present. He knew the restaurant business per se but he didn't supervise at all. He became more and more lax in his supervision of the bookkeeping end of the business. He didn't follow anything on the figures and so forth, a lot of food waste, a lot of petty theft, if you will, or you know food waste by employee theft that is sort of an intangible thing, things of that kind.

Where the trial judge sits as a jury and " 'where different *reasonable* inferences can be drawn from the evidence, the determination of which reasonable inferences shall be drawn is for the trial judge.' " *Simon v. Mock*, 75 N.C. App. 564, 568, 331 S.E.2d 300, 303 (1985) (citation omitted) (emphasis in original). The trial judge has the authority to believe all, any, or none of the testimony. *Id.* at 568-69, 331 S.E.2d at 303. Accordingly, because evidence existed in the record contrary to defendant's contention, we find no merit to defendant's contention.

## XI.

[10] Defendant also contends that the trial court erred by failing to consider as a distributive factor the disproportionate contributions of the defendant to the support of the family unit while the plaintiff was in law school. Because we find that the trial court properly considered the contributions of each spouse to the family unit during times of education and developing careers as a distributional factor, we disagree.

The trial court adopted the following findings of the referee: While plaintiff was in law school, defendant was employed at the Duke Forestry School and worked part-time at Kelly Girls. During the summer, both parties worked and lived rent free with plaintiff's parents, and in the Spring of 1977, defendant worked with a CPA firm in Elizabeth City. Mr. Davis, a friend of plaintiff's family, agreed to help financially with plaintiff's law school education and with defendant's education to become a Certified Public Accountant. While plaintiff was in law school, he received a payment each semester from Mr. Davis, which amounted to $28,000 over the three years. During the

time of law school, defendant earned $17,000, and plaintiff earned approximately $2,000.

Subsequently, the trial court also adopted the referee's finding that "[w]hile the [d]efendant earned more while [p]laintiff was in law school, [p]laintiff had substantial support from a third party which also contributed to the [d]efendant obtaining her CPA education." Further, the trial court adopted the referee's finding that "[w]hen the [d]efendant left her employment [to open] her own office, there was a drop in her income to the family while she established her practice. The [p]laintiff was able to help [d]efendant get some business for her practice."

Thus, we conclude that the trial court sufficiently considered the financial contributions of each spouse to the marriage during the time plaintiff was in law school as presented by the evidence.

## XII.

Finally, defendant contends that the trial court failed to make findings of fact and conclusions of law. We disagree.

N.C. Gen. Stat. § 50-20(j) states:

> In any order for the distribution of property made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided.

"The purpose for the requirement of specific findings of fact that support the court's conclusion of law is to permit the appellate court on review 'to determine from the record whether the judgment—and the legal conclusions that underlie it—represent a correct application of the law.'" *Patton v. Patton*, 318 N.C. 404, 406, 348 S.E.2d 593, 595 (1986) (citation omitted). Because we find the trial court's judgment contains sufficient findings of fact to permit this Court to determine on appeal whether the judgment and legal conclusions represent a correct application of the law, we find no merit to defendant's argument.

## APPEALS FROM ORDER AWARDING EXPERT FEES

[11] In her appeal from the order awarding expert witness fees, defendant first assigns as error the amount of the award of fees to David Miller and the accounting firm of Lowrimore, Warwick and Co. On 17 December 1990, the referee and the parties in the present case signed a consent order appointing "Mr. Stephen Locke in association

with the firm of Lowrimore, Warwick & Co., in particular David C. Miller" as expert witnesses to appraise the business interest owned by either or both of the parties. After appraising such property, Lowrimore, Warwick & Co. submitted a bill for services in the amount of $32,912.

On 19 April 1993, the trial court entered an order finding that the total fee requested by Lowrimore, Warwick & Co. was "appropriate for the time involved and the types of evaluations which were completed." Further, the court found that "the bulk of those fees were a direct result of the delay in the provision of the information by the plaintiff, Mr. Sharp, to the appraiser." Based on these findings, and on the fact that a retainer of $5,000 had already been paid, the trial court ordered plaintiff to pay $19,912 and defendant to pay $8,000 to the firm of Lowrimore, Warwick & Co.

N.C. Gen. Stat. § 8C-1, Rule 706(a) gives that trial court the authority to appoint expert witnesses, as in this case, "agreed upon by the parties . . . ." Further, pursuant to N.C. Gen. Stat. § 8C-1, Rule 706(b),

> [e]xpert witnesses so appointed are entitled to reasonable compensation in whatever sum the court may allow. The compensation thus fixed is payable from funds which may be provided by law in criminal cases and civil actions and proceedings involving just compensation for the taking of property. In other civil actions and proceedings the compensation shall be paid by the parties in such proportion and at such time as the court directs, and thereafter charged in like manner as other costs.

Thus, after being appointed by the court by the consent of the parties as experts in this case, the firm of Lowrimore, Warwick & Co., in association with Mr. Miller, was entitled to "reasonable compensation in whatever sum the court may allow." *See Swilling v. Swilling*, 329 N.C. 219, 223-24, 404 S.E.2d 837, 840 (1991); N.C. Gen. Stat. §§ 6-1, 7A-314(d). Our review of the record shows that the sum awarded to the experts at issue was reasonable.

Defendant argues, however, that the trial court did not have the authority to award expert fees in excess of the amount agreed upon by the parties in the consent order, which order stated that "[i]n no event will the parties be ordered to pay collectively more than $21,000 for services rendered." Defendant has failed to cite, and we find no legal authority for the proposition that a consent order entered by a

referee deprives the trial court of its authority to award reasonable compensation to an expert witness appointed by consent of the parties. Again, the burden is on the appellant to show error. *Patton*, 78 N.C. App. at 256, 337 S.E.2d at 613; *Gum*, 107 N.C. App. at 738, 421 S.E.2d at 791.

Further, defendant contends that the trial court erred in failing to reduce the expenses of the expert witnesses by the amount attributable to the acts and omissions of the appraiser. Our review of the record shows no abuse of discretion.

Plaintiff also appeals from the order awarding expert witness fees. In his appeal, plaintiff contends that the trial court's finding that the bulk of the fees were a direct result of plaintiff's delay in providing information to the appraiser is not supported by the evidence. We disagree.

The evidence shows that of the seven entities appraised by Mr. Miller and his firm, information regarding six of these entities was in the exclusive possession of the plaintiff. Mr. Miller testified that plaintiff was slow in getting information to his firm and that after receiving some information, the firm would often have to ask plaintiff to supply additional information, which plaintiff provided, "but not in the most expeditious manner." Further, the evidence shows that the experts worked on an hourly basis. We find this evidence sufficient to support the trial court's finding.

## DEFENDANT'S APPEAL FROM ORDER FOR REFEREE'S FEES

[12] Defendant contends that the trial court erred in ordering that the parties are equally responsible for the referee fee of $13,319.92. N.C.R. Civ. P. 53(d) states:

> The compensation to be allowed a referee shall be fixed by the court and charged in the bill of costs. After appointment of a referee, the court may from time to time order advancements by one or more of the parties of sums to be applied to the referee's compensation. Such advancements may be apportioned between the parties in such manner as the court sees fit. Advancements so made shall be taken into account in the final fixing of costs and such adjustments made as the court then deems proper.

We find no abuse of discretion.

Affirmed.

Judges COZORT and MARTIN concur.