INMAN, Judge.
Defendant Alan John Nordman ("Mr. Nordman") appeals from a combined equitable distribution and contempt order entered in a post-separation support, alimony, and equitable distribution action initiated by Melanie Jane Nordman ("Mrs. Nordman"). Mr. Nordman contends that the trial court erred in: (1) ordering an unequal distribution without sufficient findings of fact; (2) valuing and distributing certain assets; and (3) holding him in contempt. After careful review, we vacate in part, affirm in part, and remand.
I. FACTUAL AND PROCEDURAL HISTORY
Mr. Nordman and Mrs. Nordman were married 23 September 1973 in New York. In February 2012, the couple began to discuss the idea of moving to North Carolina but living apart in separate homes, agreeing to sell the marital home in Commack, New York and split the proceeds to buy new residences. Mrs. Nordman located a property in Mooresville, North Carolina and, in mid-2013, purchased it for $182,000. The sale of the New York home had not yet closed, however, so the couple jointly secured an interest-only loan in the amount of $127,400 to finance the purchase. Both parties signed the note and deed of trust for the mortgage, but only Mrs. Nordman's name appeared on the deed to the house.
On 7 August 2013, Mrs. Nordman moved into the Mooresville home without Mr. Nordman. The marital home sold the following week, realizing a net sum of $319,995.30. Mr. Nordman placed these funds into joint accounts with Merrill Lynch and Capital One but quickly transferred significant sums into a Scottrade account solely in his name. In January 2014, Mr. Nordman also made a cash purchase of a home in Denver, North Carolina for $217,500 from the proceeds of the marital home; only Mr. Nordman's name appears on the deed to the property. As a result of these transactions, Mrs. Nordman received $15,000 from the sale of the marital home in New York while Mr. Nordman received $304,995.34.
Mr. Nordman retired in January 2014 and began taking income from a federal pension, which included an elective survivor benefit in favor of Mrs. Nordman. Mrs. Nordman filed this action for post-separation support, alimony, and equitable distribution on 9 April 2014. Mr. Nordman filed an answer and counterclaims on 2 May 2014, seeking an unequal distribution and attorney's fees.
On 24 September 2014, a preliminary injunction was entered prohibiting waste or conversion of marital assets.[1] By another order entered 17 October 2014, the parties stipulated to an interim distribution requiring Mr. Nordman to pay 65% of each monthly mortgage payment on Mrs. Nordman's home. The parties also agreed that Mrs. Nordman would receive 50% of Mr. Nordman's federal pension "plus any cost-of-living increases or any other adjustments." Finally, the interim distribution order prohibited both parties from "alter[ing] or modify[ing] the medical insurance coverage or survivor benefit, which are paid out first from [Mr. Nordman's] pension." Despite these orders, Mr. Nordman sold a Mazda automobile titled in both parties' names in 2015 and purchased dental insurance for himself-reducing his pension payments by roughly $67 a month-without the consent or agreement of Mrs. Nordman.
In light of Mr. Nordman's actions, Mrs. Nordman filed a motion for contempt in November 2016 and an amended motion in January 2017. The parties' competing equitable distribution claims and Mrs. Nordman's contempt motion came on for hearing on 24 January 2017. At the hearing, the trial court received evidence concerning distributional factors listed in Section 50-20 of our General Statutes, including the parties' physical health. See N.C. Gen. Stat. § 50-20(c)(3) (2017). Also at issue were the valuation of Mr. Nordman's Denver home and the classification of: (1) a boat purchased by Mr. Nordman during the marriage; (2) a 2008 Honda Accord titled in both parties' names but driven by their adult son; and (3) tax debts paid by Mrs. Nordman.
The trial court entered an initial joint equitable distribution order and order on contempt on 18 April 2017. Following a combined motion for relief and new trial under Rules 59 and 60 of the North Carolina Rules of Civil Procedure filed by Mr. Nordman and a competing motion filed by Mrs. Nordman, the trial court entered an amended equitable distribution order and order on contempt on 9 August 2017.
In the amended order, the trial court found the fair market value of Mr. Nordman's Denver home to be $300,305, an increase of $82,805 in value since the date of separation. Though the trial court found the increase to constitute both active appreciation and passive appreciation,[2] it distributed the full increase in value to Mr. Nordman as divisible property. The trial court also distributed the Honda and boat to Mr. Nordman as marital property, and awarded Mrs. Nordman a credit from Mr. Nordman's distribution for her payment of the tax debts. On the whole, the trial court found "that an unequal division of the marital estate is equitable[,]" and concluded that "[a]n unequal division of the marital estate is required to achieve equity with [Mrs. Nordman] receiving 51.5% of the marital estate and [Mr. Nordman] receiving 48.5%."
The trial court also held Mr. Nordman in contempt, finding that he had violated the trial court's prior orders by: (1) adding dental benefits resulting in a reduction of pension benefits payable to Mrs. Nordman; and (2) selling the Mazda. The trial court ordered Mr. Nordman to pay $782.04 to cover the reduction in pension payments and awarded Mrs. Nordman $1,000 in attorney's fees. Mr. Nordman filed notice of appeal on the day after the amended order was entered.
II. ANALYSIS
A. Appellate Jurisdiction
Equitable distribution orders, though they may not constitute final judgments depending on the circumstances, may nonetheless be immediately appealed pursuant to Section 50-19.1 of our General Statutes:
Notwithstanding any other pending claims filed in the same action, a party may appeal from an order or judgment adjudicating a claim for ... equitable distribution if the order or judgment would otherwise be a final order or judgment within the meaning of [N.C. Gen. Stat. §] 1A-1, Rule 54(b), but for the pending claims in the same action.
N.C. Gen. Stat. § 50-19.1 (2017). The equitable distribution order appealed in this case falls within this section. Although it does not dispose of all claims in the action, such as Mrs. Nordman's alimony claim, it would constitute a final judgment within Rule 54(b) "but for the pending claims in the same action." Id. As a result, this Court has jurisdiction to hear Mr. Nordman's appeal from the equitable distribution award.
The trial court's decision to hold Mr. Nordman in contempt is likewise immediately appealable. "The appeal of any contempt order ... affects a substantial right and is therefore immediately appealable." Guerrier v. Guerrier , 155 N.C. App. 154, 158, 574 S.E.2d 69, 71 (2002) (citations omitted); see also N.C. Gen. Stat. §§ 1-277(a) & 7A-27(b)(3)(a) (2017) (allowing for appeal of interlocutory orders affecting a substantial right). We therefore possess jurisdiction to hear Mr. Nordman's appeal from the contempt portion of the order.
B. Standards of Review
On review of an equitable distribution order rendered following a bench trial we must determine whether competent evidence supports the trial court's findings of fact and whether those findings support the conclusions of law. Miller v. Miller , --- N.C. App. ----, ----, 799 S.E.2d 890, 901 (2017). Similarly, "[o]ur standard of review in contempt proceedings is limited to whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law." Blazer v. Blazer , 109 N.C. App. 390, 392, 427 S.E.2d 139, 140 (1993). The findings of fact challenged on appeal are conclusive if supported by competent evidence, though we review any conclusions of law de novo . Miller , --- N.C. App. at ----, 799 S.E.2d at 901. When it comes to the trial court's ultimate equitable distribution award, "[o]ur review ... is limited to determining whether the trial court abused its discretion in distributing the parties' marital property. Accordingly, the findings of fact are conclusive if they are supported by any competent evidence from the record." Robbins v. Robbins , 240 N.C. App. 386, 395, 770 S.E.2d 723, 728 (2015).
C. Unequal Distribution
Mr. Nordman first argues that the trial court erred in ordering an unequal distribution because it generally failed to make any express findings on those factors in Section 50-20(c) for which evidence was presented. As for the specific findings that Mr. Nordman identifies as absent, he points out that both parties introduced evidence concerning their health and ages-a factor relevant to an unequal distribution under Subsection 50-20(c)(3)-and that the trial court failed to make any findings at all concerning it. Mrs. Nordman concedes that evidence relevant to this factor was introduced and that the trial court failed to make any such findings. After careful review of the record and relevant case law, and in light of the concession by Mrs. Nordman concerning the absence of findings on one of the factors, we agree with Mr. Nordman that remand is required.
We have previously held that "[a] trial court 'must make findings of fact under section 50-20(c) regarding any of the factors for which evidence is introduced at trial.' " Warren v. Warren , 175 N.C. App. 509, 518, 623 S.E.2d 800, 805 (2006) (quoting Friend-Novorska v. Novorska , 143 N.C. App. 387, 395, 545 S.E.2d 788, 794 (2001) ). "The requirement to make such findings regarding the factors for which evidence is presented 'exists regardless whether the trial court ultimately decides to divide the property equally or unequally.' " Miller , --- N.C. App. at ----, 799 S.E.2d at 904 (quoting Warren , 175 N.C. App. at 518, 623 S.E.2d at 806 ). An order without findings as to each distributional factor deprives us of the ability to review the trial court's conclusion that a particular distribution is equitable. Miller at ----, 799 S.E.2d at 905.
Here, there is no dispute that the trial court failed to make findings concerning at least one factor for which evidence was introduced-the health of the parties. As a result, we remand the equitable distribution order to the trial court for further findings of fact. "On remand, the trial court must make findings regarding all distributional factors for which evidence was presented and determine in its discretion whether an [un]equal division is equitable," id. , particularly in light of our vacatur and remand for the reasons stated infra Part II.D.
D. Mr. Nordman's Denver Home
Mr. Nordman next argues that the trial court lacked sufficient competent evidence to find that the fair market value of his Denver home at the time of distribution was $300,305. He further contends that the trial court erred in distributing the appreciation on that property to Mrs. Nordman when it found the increase to be both passive and active. As to the first argument, Mrs. Nordman contends that her testimony concerning a $300,000 fair market value constitutes sufficient evidence; as to the second, Mrs. Nordman presents no argument at all. After a close examination of the evidence at trial and a review of the trial court's order, we agree with Mr. Nordman and vacate those portions of the trial court's order concerning the value of the Denver property.
The only record evidence supporting a valuation of the Denver home at $300,000 was Mrs. Nordman's testimony. She first sought to establish that valuation by introducing an estimate from the website Zillow.com. Mr. Nordman objected to the introduction of that estimate, and the trial court sustained the objection. Mrs. Nordman's counsel then elicited testimony from her that, as a general proposition , she kept track of the value of properties she owned by speaking with realtors and looking at Zillow. Mrs. Nordman's counsel did not ask what specific sources she had used to arrive at her $300,000 valuation of the Denver home, and instead simply inquired what she estimated the property to be worth "[b]ased on all the sources and your knowledge of the market and your knowledge of your properties."
On cross-examination, Mrs. Nordman testified that her $300,000 estimate was based entirely on the excluded Zillow report rather than any conversations with realtors or other research:
[MRS. NORDMAN:] I have no idea what the values are in Denver, North Carolina. ...
[MR. NORDMAN'S COUNSEL:] Ma'am did you not testify a while ago that you thought this property was worth about 300,000?
[MRS. NORDMAN:] I can't say.
I can only say, from my research into this to obtain a figure, I did a number of various researches [sic] on Redfin, on Zillow. I felt Zillow ... had a good reputation. And that's the figure that I used.
I have no idea what the values of, you know, and what people pay for their property.
Reading her testimony as a whole, Mrs. Nordman merely echoed evidence the trial court had already ruled should be excluded. And, assuming arguendo Mrs. Nordman could testify to the value of the Denver home as an owner because it was purchased with marital funds, "it is generally held that a property owner is competent to testify as to the value of his or her property '[u]nless it affirmatively appears that the owner does not know the market value of his property.' " Hill v. Sanderson , 244 N.C. App. 219, 232, 781 S.E.2d 29, 38 (2015) (quoting Goodson v. Goodson , 145 N.C. App. 356, 361, 551 S.E.2d 200, 204 (2001) ). Mrs. Nordman affirmatively stated on the record that she "had no idea" of the value of the Denver home, rendering her testimony to that effect insufficient to support the trial court's valuation.[3] See, e.g., Hill , 244 N.C. App. at 232, 781 S.E.2d at 39 (holding a wife's testimony that the fair market value of the marital home was $45,000 was insufficient to support a finding to that effect in an equitable distribution order where the wife also admitted "I really don't have knowledge of that kind of stuff"). As a result, we vacate those findings pertaining to the value of the Denver home.[4] Id.
E. Distribution of the Honda
Mr. Nordman next argues that the trial court erred in distributing the Honda because it was actually the parties' adult son's car and therefore could not be marital property subject to distribution. We disagree. Section 50-20 defines marital property as "all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned[.]" N.C. Gen. Stat. § 50-20(b)(1). In the context of automobiles, "[t]he words 'title' and 'ownership' are words that may be used interchangeably." Nationwide Mut. Ins. Co. v. Hayes , 276 N.C. 620, 630, 174 S.E.2d 511, 517 (1970). It is undisputed that only Mr. and Mrs. Nordman's names-and not their son's-appear on the title to the Honda. Although their son uses the car and pays for its insurance and repairs, the trial court correctly classified the vehicle as property owned by his parents, and therefore as marital property. Mr. Nordman's argument on this point is overruled.
F. Mr. Nordman's Boat
Mr. Nordman also challenges the trial court's finding that the boat he purchased in the course of the marriage was subject to distribution, as he testified he bought the boat with funds he received by inheritance and therefore overcame the presumption that it was marital property. See, e.g., Holterman v. Holterman , 127 N.C. App. 109, 113, 488 S.E.2d 265, 268 (1997) (acknowledging that property purchased in the course of a marriage is presumed to be marital). Mrs. Nordman, however, points to evidence that Mr. Nordman commingled his inheritance by depositing it into a joint account that was used to pay marital expenses. Reviewing the arguments as briefed by the parties, we hold Mr. Nordman has abandoned appeal of this issue.
Mr. Nordman's documentary evidence shows that he purchased the boat from an account in his sole name, and he testified that he received those funds as an inheritance. Mrs. Nordman did not dispute that her husband received that inheritance, but instead testified that those funds were previously placed into a joint account and then transferred into a separate account in his name. Mr. Nordman testified to a similar series of transactions and acknowledged transferring the inheritance into a joint account before returning it to an individual one. Separate property commingled with marital property transmutes into the latter "if the party claiming the property to be his separate property is unable to trace the initial deposit into its form at the date of separation." Fountain v. Fountain , 148 N.C. App. 329, 333, 559 S.E.2d 25, 29 (2002).
Mr. Nordman points to no evidence tracing his inheritance once it was deposited in the joint account and before he purchased the boat. Nor does he cite any legal authority for his conclusory argument, either in his principal or reply brief. "It is not the duty of this Court to peruse through the record, constructing an argument for [the] appellant[,]" Person Earth Movers, Inc. v. Thomas , 182 N.C. App. 329, 333, 641 S.E.2d 751, 754 (2007), and "if an argument contains no citation of authority in support of an issue, the issue will be deemed abandoned." Thompson v. Bass , --- N.C. App. ----, ----, 819 S.E.2d 621, 627 (2018). As a result, Mr. Nordman has abandoned this argument.
G. The Tax Debts
Mr. Nordman also challenges the equitable distribution award on the ground that the evidence was insufficient to show that Mrs. Nordman paid the parties' joint tax debts out of her separate funds. To support this argument, Mr. Nordman points to the following testimony by Mrs. Nordman on cross-examination:
[MR. NORDMAN'S COUNSEL:] My question was you paid these tax debts that were less than 10,000 after you took 10,000 from the joint account; yes or no? And then explain it.
[MRS. NORDMAN:] Yes. It was from the account, the joint account; yes.
But Mrs. Nordman explained that she withdrew $10,000 from the joint account to make up for pension payments that Mr. Nordman had failed to provide to her, and that she actually paid the tax debts from her separate bank account.
We cannot disturb a trial court's finding of fact if it is supported by "any competent evidence." Fitzgerald v. Fitzgerald , 161 N.C. App. 414, 419, 588 S.E.2d 517, 521 (2003). This rule applies even if there is also competent evidence contrary to the trial court's finding. Johnson v. Johnson , 117 N.C. App. 410, 413, 450 S.E.2d 923, 926 (1994). The same is true of any conflicts in Mrs. Nordman's testimony, to the extent that any arose, which the trial court is uniquely tasked with resolving. Williams v. Pilot Life Ins. Co. , 288 N.C. 338, 343, 218 S.E.2d 368, 372 (1975). Any reasonable inferences from the testimony are for the trial judge to draw, and the judge "has the authority to believe all, any, or none of the testimony." Sharp v. Sharp , 116 N.C. App. 513, 530, 449 S.E.2d 39, 48 (1994). Because competent evidence was introduced that Mrs. Nordman paid the tax debts with her separate funds and the trial court was free to disregard any inferences to the contrary, we hold the evidence was sufficient to support the trial court's finding to that effect.
H. Contempt
Mr. Nordman argues that the trial court erred in holding him in contempt for violating prior orders prohibiting him from reducing the pension benefits payable to Mrs. Nordman. As relief, Mr. Nordman requests that we vacate the decision to hold him in contempt and the attorney's fees award to Mrs. Nordman. We note, however, that Mr. Nordman does not challenge the trial court's decision to hold him in contempt for violating an earlier order concerning the unauthorized wasting or conversion of marital assets. Because Mr. Nordman fails to challenge one of the trial court's grounds for holding him in contempt and awarding attorney's fees, we need not address his argument as to the other ground. Cf. Conrad v. Conrad , 82 N.C. App. 758, 760, 348 S.E.2d 349, 350 (1986) ("[T]he contempt power of the district court includes the authority to require one to pay attorney fees in order to purge oneself from a previous order of contempt for failing and refusing to comply with an equitable distribution order.").
III. CONCLUSION
For the foregoing reasons, we remand the equitable distribution order for further findings of fact on all factors provided by Section 50-20(c) arising from the evidence. The trial court need not, however, make additional duplicative findings on those factors already resolved. We also vacate the trial court's findings concerning the value of Mr. Nordman's Denver property, including those pertaining to its appreciation. On remand, we leave the decision to receive further evidence to the trial court's sound discretion.[5] We leave undisturbed the remainder of the trial court's order.
VACATED IN PART, AFFIRMED IN PART, AND REMANDED.
Report per Rule 30(e).
Judges BRYANT and DIETZ concur.

The exact terms of this order are unclear from the record on appeal. The trial court entered a memorandum order on 24 September 2014 concerning the mortgage on the Mooresville home and Mr. Nordman's pension; it appears those terms were memorialized in a formal order entered 17 October 2014, as described infra . However, neither the September memorandum order nor the formal October order expressly prohibit wasting or converting assets. Further confusing the issue is a motion for contempt filed by Mrs. Nordman quoting language to that effect from a 24 September 2014 order that does not appear in the memorandum order in the record on appeal. Finally, the findings of fact in the order from which Mr. Nordman appeals seem to acknowledge the existence of a preliminary injunction order that both prohibits waste and conversion of marital assets and awards Mrs. Nordman half of Mr. Nordman's pension.

The trial court's order describes the increase as "PA" and "Active appreciation." A pre-trial interim distribution order in the record states that " 'PA' = passive appreciation or depreciation to a marital asset after separation and before date of distribution."

Mr. Nordman failed to object to Mrs. Nordman's valuation following the exclusion of the Zillow estimate, and " 'it is a well established rule that evidence admitted without objection, though it should have been excluded had proper objection been made, is entitled to be considered for whatever probative value it may have.' " Edwards v. Edwards , --- N.C. App. ----, ----, 795 S.E.2d 823, 825 (2017) (quoting Quick v. United Ben. Life Ins. Co. , 287 N.C. 47, 59, 213 S.E.2d 563, 570 (1975) ). However, after Mr. Nordman failed to object, Mrs. Nordman's valuation was revealed to be a speculative assumption on her part because she admitted she had no idea of the value of the home herself. Such an assumption lacks any probative value for the trial court to consider. See Hampton Guano Co. v. Hill Live Stock Co. , 168 N.C. 442, 452, (reprinted in 1936 at 168 N.C. 522, 532), 84 S.E. 774, 778 (1915) ("Unless the foundation for such proof is well laid, it lacks in probative force, as it has not been removed from the realm of speculation and is only conjectural and, of course, unreliable."). Furthermore, "[i]n a trial or hearing by the court without a jury, the rules of evidence are not so strictly enforced as in a jury trial and it will be presumed that the judge disregarded any incompetent evidence that may have been admitted unless it affirmatively appears that he was influenced thereby." Stanback v. Stanback , 31 N.C. App. 174, 179-180, 229 S.E.2d 693, 696 (1976). Here, it appears that the trial court relied on Mrs. Nordman's incompetent and non-probative testimony, as it is the only evidence in the record that could possibly support its valuation finding.

Because we vacate the valuation of the Denver property, we do not address the trial court's classification of the increase in value from the date of separation as both passive and active appreciation. On remand, the trial court's findings as to the value of the Denver property should clearly classify any change in value as either active or passive, and distribute-or not distribute, as the case may be-it accordingly. N.C. Gen. Stat. § 50-20(b)(4)(a) (2017).

Outside the testimony by Mrs. Nordman discussed supra , the only evidence of record concerning the value of the Denver home is the tax value introduced by Mr. Nordman. Because this evidence was introduced without objection, the trial court was free to consider it for its probative value; we note, however, that "[o]ur Supreme Court has held that ad valorem tax records are not competent to establish the market value of real property." Edwards , --- N.C. App. at ----, 795 S.E.2d at 825 (citing Star Mfg. Co. v. Atlantic Coast Line R.R. , 222 N.C. 330, 332-33, 23 S.E.2d 32, 36 (1942) ) (additional citations omitted). The trial court may, in its discretion, determine whether additional evidence is appropriate.