STROUD, Judge.
 

 *86
 
 Plaintiff Wayne Morgan Miller ("Husband") appeals from several orders entered by the district court related to his divorce from defendant Cynthia Bailey Miller ("Wife"). Husband raises both procedural and substantive issues with the trial court's equitable distribution order. Although the trial court properly entered its order vacating the divorce judgment under Rule 60(b) and therefore had jurisdiction over the equitable distribution claims, we remand for the trial court to address substantive issues contained in the equitable distribution order itself.
 

 Facts
 

 The parties were married on 4 July 1983 and had no children. On 27 July 2011, Wife filed her complaint for divorce from bed and board and equitable distribution; the parties were still living together at that time. Husband filed his answer on 23 September 2011, which alleged in part that "[n]o facts exist to justify an unequal division of marital property." His answer also alleged that the parties were "not living separate and apart." Wife filed a motion to amend her complaint, and after the trial court granted the motion, Wife filed her amendment on 12 October 2011, adding detailed factual allegations to the fault grounds of her
 
 *87
 
 divorce from bed and board claim. On 3 January 2012, the trial court began the hearing on Wife's claim for divorce from bed and board. That same day, a "Memorandum of Judgment/Order" was apparently entered without prejudice which granted Wife exclusive possession of the marital home, prohibited the parties from disposing of personal property, and provided that "[t]his matter is continued until January 23, 2012".
 
 [2]
 
 On 19 January 2012, Husband filed his answer to the amended complaint. On 30 January 2012, the hearing on divorce from bed and board concluded, and on 15 March 2012, the district court entered an order granting Wife a divorce from bed and board and exclusive possession of the marital home, giving Husband ten days to vacate the home. The district court found Wife's testimony "more credible" than Husband's. The trial court found that Husband had admitted to committing adultery during the marriage and that he was "an excessive user of alcohol[.]" When drunk, Husband called Wife "stupid" and many derogatory and profane names. He had also told her that he wished she were dead and "threatened to punch [Wife] in her face on occasions when the [Wife] asked him questions about their properties."
 

 In the divorce from bed and board order, the trial court also found that Wife had found evidence of Husband's affair at their Virginia residence, including a used condom, an earring, and "lips painted with lipstick on the bathroom mirror [and] the words 'Love You' underneath them." The trial court also found that Husband had been asked "whether he recently acquired a Virginia driver's license, and he falsely said 'no' under oath." Husband had also registered a vehicle in Virginia, using a Virginia address, although he had been living in North Carolina since "as early as June of 2010." He also "continued to have his ex-girlfriend of 26 years ago as a beneficiary on his life insurance policy."
 

 A series of motions, countermotions, and orders arising from disputes regarding various items of personal property and Husband's move out of the marital home followed. The parties finally began living separate and apart on 21 March 2012. On 16 April 2012, the trial court entered an order appointing a referee to inventory the parties' marital and separate personal property. In addition, on the same date, the trial court
 
 *88
 
 entered a "Consent Order to Add Supplemental Pleading" which stated in relevant part as follows:
 

 *894
 
 1. Since the filing of the complaint certain facts and events have occurred which makes it just to file a supplemental proceeding, to wit: the parties hereto have legally separated.
 

 2. The Parties consent to republish the Second Claim for Relief as set forth in the original complaint in which both parties join in the relief sought. The Parties hereto do so move and the motion is granted by the Court.
 

 3. The Defendant does not pray that an unequal division of the marital property be made.
 

 4. Said Second Claim as contained in Plaintiff's Complaint is hereby republished as of the date of entry of this Consent Order.
 

 5. The Defendant's defense to dismiss the Equitable Distribution claim due to it being filed before the date of separation is hereby withdrawn by the Defendant.
 

 The parties engaged in extensive discovery related to equitable distribution, the referee's report was filed, and both parties filed various motions regarding discovery and valuation of property, which led to the trial court entering several orders based on these motions. On 12 June 2012, Husband filed a motion for interim distribution, requesting sale of the marital home, as well as distribution of various items of personal property to him. On 3 December 2012, the trial court apparently entered a consent order on a "Memorandum of Judgment/Order" form in which the parties agreed that the fair market value of the marital home as of the date of separation was $250,173.00; they also agreed that the fair market value of the Virginia real property as of the date of separation was $87,200.00.
 
 [3]
 
 The parties attended mediation of the equitable distribution claim on 17 December 2012 but did not reach an agreement.
 

 On 22 March 2013, Husband filed a complaint for absolute divorce. Wife filed a motion for extension of time to answer. Husband filed a motion for summary judgment on 22 April 2013, alleging that "there is no genuine issue of a material fact and [Husband] is entitled to an absolute divorce as a matter of law." Husband's motion also noted: "In addition,
 
 *89
 
 [Husband] requests that the Court take judicial notice of the entire files in those actions between the same parties hereto being 12 CVD 288, and 11 CVD 701."
 
 [4]
 
 Wife filed her answer on 16 May 2013, admitting the date of separation and alleging that the parties "currently have pending claims for equitable distribution in Chatham County District Court Case No. 11 CVD 701." The district court entered an order on 22 May 2013 granting Husband's claim for an absolute divorce while noting that "[a]ll existing issues raised in 11 CVD 701 between the same parties hereto should survive this absolute divorce."
 

 On 3 June 2013, Husband filed a motion to continue the equitable distribution trial scheduled for the next day and a motion for the trial judge to be recused on the basis that Husband thought the judge was unable to "complete the proceedings in a fair and impartial manner." The trial court denied the motions but the trial was continued to 24 June 2013 after Husband's counsel was granted leave to withdraw from the case. On 24 June 2013, Husband's new counsel appeared but the trial was again continued.
 

 On 1 July 2013, Husband's new counsel made an oral motion to amend his pleadings to seek an unequal distribution in Husband's favor; Wife did not oppose this motion and the trial court entered an order allowing it on 19 July 2013. But on 5 August 2013, Husband's legal strategy changed course and he filed a motion to dismiss Wife's equitable distribution claim for lack of subject matter jurisdiction, since the parties were not yet separated when the claim was filed. Husband alleged that he had not counterclaimed for equitable distribution and that the divorce from bed and board action in which Wife filed her claim was resolved on 15 March
 
 *895
 
 2012 upon entry of the order granting divorce from bed and board. He also alleged that Wife had not filed any supplemental pleadings containing an equitable distribution claim and that the parties had already been divorced, ending Wife's ability to bring a claim for equitable distribution.
 

 Wife sought to preserve her equitable distribution claim on all fronts. In the divorce from bed and board case, she filed an affidavit opposing Husband's motion to dismiss her equitable distribution claim;
 

 *90
 
 in the absolute divorce case, she filed a Rule 60(b) motion asking the district court to set aside the absolute divorce judgment and allow her to file a new answer including a counterclaim for equitable distribution in the divorce case. The district court held a hearing on the motions filed by both parties on 23 October 2013 and rendered a ruling in open court, with both parties present, declaring that the court was granting Wife's motion to set aside the divorce judgment and allowing her to file a counterclaim for equitable distribution and dismissing Husband's motion to dismiss Wife's equitable distribution claim in the divorce from bed and board case.
 

 Before the court filed a written order based upon its rendition of the ruling on 23 October 2013, Husband was remarried, on 28 October 2013, in Virginia. On 10 December 2013, Husband filed a motion to re-open evidence, noting that at the time of the hearing on 23 October 2013, he had not re-married, but that subsequent to the hearing and prior to the entry of an order vacating the divorce judgment, he had remarried. Thus, Husband argued that he "should be afforded an opportunity to present evidence to [the district court] as to his remarriage since the entry of an order vacating his divorce judgment would not be in any way equitable and would create great legal hardship for him, additionally the entry of such order would interfere with his right to remarry." Further, Husband alleged that "[t]he entry of an order vacating the divorce judgment is unnecessary given that [the district court] is prepared to enter an order dismissing [Husband's] motion to dismiss equitable distribution in 11 CVD 701 for lack of subject matter jurisdiction, and thus [Wife] will not be prejudiced."
 
 [5]
 

 Husband also submitted his requested findings of fact for the court's "order vacating the divorce judgment entered in this action[,]" including that he began living with Dorothy Virginia Brinkley in January 2013 and that they then married on 28 October 2013. He noted that when he heard the trial court's
 

 declaration made in open Court on October 23, 2013, that being that it was going to vacate the otherwise properly entered judgment of absolute divorce in this action, he informed Ms. Brinkley of this and Ms. Brinkley expressed concern about being unable to marry [Husband] for a considerable period of time in the event that an order
 
 *91
 
 was actually entered vacating the divorce judgment and [Husband] was concerned about being able to maintain his relationship with Ms. Brinkley without being able to marry her for a considerable period of time. [Husband] loved Ms. Brinkley and did not want to lose the relationship. Ms. Brinkley was seventy-one years old as of October 23, 2013.
 

 The trial court held a hearing on 23 January 2014 regarding Husband's motion to reopen evidence. Husband testified that he married Ms. Brinkley five days after the 23 October 2013 hearing, on 28 October 2013, and they had created and signed a prenuptial agreement during the time between the hearing and the marriage.
 
 [6]
 
 After hearing the additional evidence, the trial judge noted that his "inclination is to find the evidence is not persuasive[.]"
 

 Near the end of the hearing, after Wife's counsel noted that he had never faced this situation, the court agreed, noting: "I don't think any human being ever has, so we're all sailing uncharted seas here." In trying to figure out how to address the motions at issue, Husband's counsel argued that the
 
 *896
 
 court needed "to make findings about the new evidence that [it] heard and it all needs to be embodied in one order, and you can say that despite, uh it-it being equitable relief that, in your discretion, you don't think [Husband] having two wives is a problem."
 

 The trial court replied:
 

 I don't believe there's any prejudice to him that cannot be ameliorated by a remarriage, and I believe he married with full knowledge of the Court's intent and that [the], um, marriage should not be an impediment to the granting of the motion under these circumstances, and the motion should be allowed.
 

 After more back and forth with Husband's trial counsel, the Court reiterated its position:
 

 THE COURT: -he attempted to enter a marriage with full knowledge of the Court's intent, and I think it was a tactical marriage, entered for tactical reasons only, as demonstrated by the circumstances and by the prenuptial
 
 *92
 
 agreement and what its provisions appear to be. It doesn't appear to be a bona fide marriage that has any legitimate purpose other than to circumvent the Court's intended ruling, and you can put that in the order if you like, [Wife's counsel]. And he can live with the consequences on him and her because he made the decision to contract it. So, that's my decision.
 

 On 17 March 2014, the court entered its order granting Wife's Rule 60(b) motion and setting aside the 22 May 2013 divorce judgment. In its very long and detailed order, the court addressed much of the procedural history of the various cases as summarized above and found that the hearing had been held on the motion on 23 October 2013 and before Wife's counsel completed drafting an order, Husband "proceeded to get remarried[.]" The order granting Wife's 60(b) motion included numerous findings, including that:
 

 16. At the time of the entry of the Absolute Divorce Judgment in this action,
 
 both parties
 
 were operating under the
 
 unequivocal belief
 
 that both parties had pending claims for equitable distribution in the companion court action. This was evident based upon the actions of
 
 both parties
 
 in vigorously and continuously pursuing their equitable distribution claims in the companion court action for the 13 month period prior to the entry of the Absolute Divorce Judgment in this court action. This was also evident given the court filings of
 
 both parties
 
 in this court action, including the fact that [Husband] and his then counsel ... submitted the Absolute Divorce Judgment to the Court for signature which contained express language stating that both parties have "pending, equitable distribution claims" in the companion court action and that these claims should be reserved for future hearing.
 

 17. Nevertheless,
 
 after
 
 entry of the Absolute Divorce Judgment in this court action, [Husband] filed a Rule 12(b)(1) Motion to Dismiss as to [Wife's] equitable distribution claim in the companion court action. The Motion to Dismiss was filed in the companion court action on August 5, 2013.
 

 18. Contrary to his earlier indications, [Husband] now contends that [Wife] does not have a valid, pending claim for equitable distribution in the companion court action
 
 *93
 
 and further contends that it is too late for [Wife] to file a new claim for equitable distribution in this action, in the companion court action or otherwise since the parties are now divorced.
 

 19 In order to prevent the great injustice of [Wife] potentially being denied the right to proceed with an equitable distribution claim due to this newfound contention of [Husband], it is necessary to set aside the Absolute Divorce Judgment in its entirety and to allow [Wife] to file a counterclaim for equitable distribution in this court action.
 

 (Emphasis in original).
 

 In addition, while the order noted that Wife initially filed her request for equitable distribution prematurely, the court also found that "[i]n the Consent Order to Add Supplemental Pleading, [Husband] expressly joined in the request for an equitable distribution[.]" The order includes detailed findings addressing all of the many "Actions Taken in the Companion Court Action by Both Parties in Pursuit of their Respective Equitable Distribution Claims" and then finds:
 

 *897
 
 42. At the time of the entry of the Absolute Divorce Judgment in this court action, both parties reasonably believed that the Consent Order to Add Supplemental Pleading effectively established the parties' respective equitable distribution claims in the companion court action, and [Wife] had no knowledge otherwise until the Rule 12(b)(1) Motion to Dismiss was raised.
 

 The court found that Wife "reasonably relied" on Husband's statements and actions and reasonably believed "that both parties had valid equitable distribution claims pending[.]" Additionally, the trial court concluded in its findings that the parties had a "mutual belief" that they both had claims for equitable distribution pending at the time the trial court entered its absolute divorce decree.
 

 The trial court also explicitly described its concerns regarding whether its ruling dismissing Husband's motion in the divorce from bed and board action would be sufficient to protect Wife's claim:
 

 118. The Court believes that [Husband's] Rule 12(b)(1) Motion to Dismiss in the companion court action should be denied. The decision as to denying said Motion in the companion court action was made after much thought and consideration. However, the Court does have concerns as
 
 *94
 
 to whether the appellate courts will come to the same conclusion despite the clearly expressed intent of the parties contained in the Consent Order to Add Supplemental Pleading. The concern is strong enough for the Court to believe that this Rule 60(b) Order should be entered to ensure that [Wife] can file a counterclaim in this action so that she can pursue her right to equitable distribution. To refuse the granting of this Rule 60(b) Order in this action would allow [Husband] to potentially benefit from a mutual mistake.
 

 119. [Husband] has the right to appeal the Court's decision in the companion court action (as to the denial of his rule 12(b)(1) Motion to Dismiss). This Court is fully aware that the North Carolina Court of Appeals or a higher authority could determine that this Court should have granted [Husband's] Rule 12(b)(1) Motion to dismiss in the companion court action. The legal issues raised in the companion court action are very complex and the matter could be decided either way on appeal. The likelihood of the North Carolina Court of Appeals determining that no valid equitable distribution claims exist in the companion court action weighs heavily on this Court due to the great prejudice that would result to [Wife] under the circumstances. The Court cannot simply wait to set aside the Absolute Divorce Judgment pending a decision from the North Carolina Court of Appeals in the companion court action due to the great risk and prejudice that [Wife] would face by delaying the ruling in this matter. The only way to ensure that [Wife] has a valid equitable distribution claim is to set aside the Absolute Divorce Judgment entered in this action and allow [Wife] to file a counterclaim for equitable distribution. Justice requires that this occur now.
 

 The court also entered its order denying Husband's 12(b)(1) motion to dismiss Wife's equitable distribution claim in the divorce from bed and board action on 17 March 2014. In that even more extensive order, the trial court made the following relevant conclusions of law:
 

 4. Rule 15(d) of the North Carolina Rules of Civil Procedure allows for defective pleadings to be corrected by the filing of a supplemental pleading.
 

 *95
 
 5. Rule 13(e) of the North Carolina Rules of Civil Procedure allowed [Husband] the right to pursue his own counterclaim for equitable distribution by supplemental pleading.
 

 6. The entry of the Consent Order to Add Supplemental Pleading, the "republishing" of the second claim for relief in [Wife's] original complaint (for equitable distribution) as of April 16, 2012, and the parties' act of joining in the relief sought therein effectively established [Wife's] claim for equitable distribution.
 

 7. Further, [Wife's] various court filings after entry of the Consent Order to Add Supplemental Pleading further support the conclusion that [Wife] effectively established a valid claim for equitable distribution[.]
 

 *898
 
 8. The entry of the Consent Order to Add Supplemental Pleading, the "republishing" of the second claim for relief in [Wife's] original complaint (for equitable distribution) as of April 16, 2012, and [Husband's] act of joining in the relief sought therein effectively established [Husband's] claim for equitable distribution.
 

 9. Further, [Husband's] various court filings after entry of the Consent Order to Add Supplemental Pleading further support the conclusion that [Husband] effectively established a valid claim for equitable distribution[.]
 

 10. In the event the Consent Order to Add Supplemental Pleading and any subsequent filings in this court action did not effectively establish a claim for equitable distribution for either party or in the event that it is determined that no valid claim for equitable distribution was filed by either party in this court action, then [Husband] is still estopped from defeating [Wife's] right to pursue a claim for equitable distribution[.]
 

 11. The principles of equitable estoppel prevent the dismissal of [Wife's] claim for equitable distribution.
 

 12. [Wife] has clean hands in this court action.
 

 13. Justice requires that [Wife] be deemed to have the right to proceed with a claim for equitable distribution.
 

 On or about 7 April 2014, Wife filed an amended or supplemental answer to Husband's complaint for absolute divorce including a
 
 *96
 
 counterclaim for equitable distribution and a motion to consolidate the divorce claim with the 2011 action for divorce from bed and board. Husband filed a motion to dismiss Wife's counterclaim for equitable distribution, arguing that "he believes that the Court erred in vacating the divorce judgment in this action and that the counterclaim is being filed after the parties were properly divorced." Husband also noted that he "additionally opposes [Wife's] claim for an unequal distribution in her favor." The trial court filed an order granting Wife's motion and denying Husband's motion to dismiss on 16 July 2014, although it appears the order was never signed by the judge.
 
 [7]
 

 The equitable distribution trial began on 29 September 2014 and was held over the course of four nonconsecutive days before coming to conclusion over a year later, on 17 November 2015. On 19 March 2015, the court made a partial ruling, and the trial court entered its judgment and order granting Husband an absolute divorce from Wife and dissolving the marriage. The order noted that the trial court "shall retain jurisdiction over the matter of equitable distribution in order to enter and enforce any final orders in these consolidated proceedings[.]" That same date, the trial court entered several "Court Order[s] Acceptable for Processing" ("COAP") for both parties' employee annuities and former spouse survivor annuities, addressing distribution of the retirement benefits of both parties. Husband filed a motion requesting findings of fact and modifications to the court's proposed equitable distribution judgment and order on 17 September 2015.
 

 The district court entered its equitable distribution judgment and order on 17 November 2015. The court found that as of the date of separation and presently Husband and Wife were the joint owners of marital property in Siler City, North Carolina ("the marital home"). After noting that both parties testified that they did not want the property distributed to them, the court found that the marital home "should be listed for sale ... within sixty (60) days after the entry of this Order at a price agreed upon by the parties, or in the event the parties are unable to agree, a price recommended by the realtor." The proceeds were to be divided equally between the parties. The court similarly found the parties to be joint owners of seven acres of land in Virginia (the "Virginia Property") and ordered that this marital property be sold as well, with the proceeds again split equally between the parties. If either property had not sold before the expiration of the six month listing agreement, the parties were to return to court for further review.
 

 *97
 
 The court also found that "[a]s of the date of separation [Husband] and Randy A. Winkleman were parties to a Timber Agreement dated November 20, 2009, which entitled
 
 *899
 
 [Husband] to receive fifty percent of the proceeds from timbering certain property located in ... Pennsylvania." The court concluded that the Timber Agreement was marital property and that it should be distributed to Husband at its current value of $5,000.00.
 

 In addition, the trial court's order adopted the COAP's, which divided the monthly retirement benefits each party receives under the Civil Service Retirement System (CSRS) equally and requires Husband to pay Wife $13,009.50, one-half of the difference between the monthly CSRS annuity payments received by the parties from the date of separation through 30 September 2014. In addition, the court ordered Husband to pay Wife a distributive award of $13,462.00 within 30 days of the entry of the order.
 

 Finally, the trial court classified Husband's 2011 Suburban vehicle as his separate property with a value of $49,000.00 and found that both it and the secured debt attached to it of $64,638.82 were acquired after Wife filed her action for divorce from bed and board and not for the joint benefit of the parties. Wife filed a motion on 3 December 2015 to amend and correct issues related to the judgment and order and for reconsideration of all of the issues raised on 17 November 2015. Husband timely appealed the equitable distribution judgment and order to this Court.
 

 Husband filed a motion to amend the record on appeal on or about 15 July 2016, claiming that he "inadvertently failed to include" his notices of appeal from: (1) the denial of his Rule 12(b)(1) motion to dismiss, filed 28 March 2014, (2) the order granting Wife Rule 60(b) relief, filed 18 March 2014, and (3) orders granting Wife's motion to consolidate and strike and denying Husband's motion to dismiss, filed 29 July 2014. On 18 August 2016, Wife filed a motion to amend the record on appeal, asking to include: (1) a copy of the 11 July 2016 OPM notice regarding the award of monthly annuity and survivor annuity; and (2) a copy of Husband's 22 July 2016 COAP filing, a copy of the sanitized order for the record redacting certain personal and private information, and a copy of the un-redacted version for the file. By separate order, we have granted both motions to amend the record.
 

 Discussion
 

 On appeal, Husband raises multiple issues, both procedural and substantive, with the trial court's equitable distribution order. We first
 
 *98
 
 address the procedural concerns and then address some of the substantive issues.
 

 I. Subject Matter Jurisdiction Over Equitable Distribution Claims
 

 First, Husband argues that the trial court erred both by denying his motion to dismiss the equitable distribution claim Wife filed prior to the date of separation for lack of subject matter jurisdiction and its order vacating the divorce judgment pursuant to Rules 60(b)(1), (3), and (6), thus allowing Wife the opportunity to file a new equitable distribution claim after separation and prior to entry of the absolute divorce. Essentially, the trial court entered these two orders which have the same practical effect-preservation of Wife's equitable distribution claim-by two different legal routes, in full recognition of jurisdictional problems caused by the filing of Wife's equitable distribution claim before the parties had separated. Thus, Wife's equitable distribution claim must be dismissed only if
 
 both
 
 orders were in error and reversed. We will therefore address only the order granting Wife's Rule 60 motion since it is dispositive.
 

 "Rule 60(b) has been described as a grand reservoir of equitable power to do justice in a particular case. The North Carolina Supreme Court has stated that its broad language gives the court ample power to vacate judgments whenever such action is appropriate to accomplish justice."
 
 Jim Walter Homes, Inc. v. Peartree
 
 ,
 
 28 N.C.App. 709
 
 , 712,
 
 222 S.E.2d 706
 
 , 708 (1976) (citations, quotation marks, and ellipses omitted). "Our courts have long held that a Rule 60(b) motion is addressed to the sound discretion of the trial court and its ruling will not be disturbed absent an abuse of that discretion."
 
 Venters v. Albritton
 
 ,
 
 184 N.C.App. 230
 
 , 234,
 
 645 S.E.2d 839
 
 , 842 (2007) (citations and quotation marks omitted). Under Rule 60(b)(6), the trial court "may relieve a party or his legal representative from a final judgment, order, or proceeding for ... [a]ny other reason justifying relief from the operation of the
 
 *900
 
 judgment." N.C. R. Civ. P. 60(b)(6). "The grounds for setting aside judgment pursuant to Rule 60(b)(6) are equitable in nature. What constitutes cause to set aside judgment pursuant to Rule 60(b)(6) is determined by whether (1) extraordinary circumstances exist; and (2) whether the action is necessary to accomplish justice."
 
 Trivette v. Trivette
 
 ,
 
 162 N.C.App. 55
 
 , 63,
 
 590 S.E.2d 298
 
 , 304 (2004) (citations omitted).
 

 Husband relies in part on
 
 Howell v. Howell
 
 ,
 
 321 N.C. 87
 
 , 91,
 
 361 S.E.2d 585
 
 , 588 (1987), where our Supreme Court reversed an order by this Court upholding a trial court order granting the defendant's motion to set aside the effect of a divorce judgment "to the extent that it barred
 
 *99
 
 her claim for equitable distribution[.]" The Supreme Court noted in
 
 Howell
 
 , however, that it disagreed with this Court "on a narrow ground."
 
 Id
 
 . Specifically, our Supreme Court stated:
 

 Ms. Howell did not seek to have the trial court, and the trial court did not, set aside the divorce judgment. Rather, pursuant to Ms. Howell's motion, the trial court ordered that she be given "relief from the effect of the divorce judgment ... to the extent of allowing her to assert a counterclaim against the plaintiff for equitable distribution...." Because the trial court did not set aside the divorce judgment itself, its terms and validity still abide. Likewise, the legal effects of the divorce judgment still obtain. Neither Rule 60(b)(6) nor any other provision of law authorizes a court to nullify or avoid one or more of the legal effects of a valid judgment while leaving the judgment itself intact.
 

 In so ruling we are not insensitive to the plight of Ms. Howell and, if her testimony is believed, her apparently diligent reliance on counsel's advice. We simply are unwilling to hold that a court may leave intact a judgment of absolute divorce, yet order that one or more of the legal effects of that judgment may somehow be avoided. Such a holding would empower a court to say, for example, that a divorce decree would not have the legal effect of permitting the parties to remarry or of dissolving other various rights arising out of the marital relation. These kinds of judicial rulings would negate the provisions of N.C.G.S. § 50-11 by which the legislature has prescribed the legal effects of judgments of absolute divorce. These effects are beyond the power of a court to change.
 

 Id.
 
 at 91-92,
 
 361 S.E.2d at 588
 
 (footnote omitted).
 

 Husband claims that the
 
 Howell
 
 Court "implicitly concluded that the failure to timely file an equitable distribution claim was not an extraordinary circumstance." The Supreme Court's own language in
 
 Howell
 
 , though, refutes this argument, as the Court specifically stated that it was reversing this Court "on a narrow ground."
 
 Id
 
 . at 91,
 
 361 S.E.2d at 588
 
 . The
 
 Howell
 
 decision is based upon the fact that the defendant, Ms. Howell, asked for relief from an effect of a divorce judgment while leaving the divorce decree itself intact.
 
 Id
 
 . at 92,
 
 361 S.E.2d at 588
 
 . The Supreme Court never addressed whether failure to file a timely equitable distribution claim was or was not an extraordinary circumstance.
 

 *100
 
 Here, by contrast, the trial court completely vacated the divorce decree, using its discretion under Rule 60(b) and explicitly weighing the equities of the situation to both parties. Husband even alleged in his motion to reopen the evidence-so that he could present evidence of his remarriage days after the court's rendition of its ruling-that "[t]he entry of an order vacating the divorce judgment is unnecessary given that [the district court] is prepared to enter an order dismissing [Husband's] motion to dismiss equitable distribution in 11 CVD 701 for lack of subject matter jurisdiction, and
 
 thus [Wife] will not be prejudiced
 
 ." (Emphasis added). He then appealed from that very ruling with the obvious goal of prejudicing Wife by eliminating her equitable distribution claim. Fortunately, the trial court recognized Husband's legal strategy of setting up a jurisdictional defect which he could then exploit on appeal, since a lack of subject matter jurisdiction cannot be waived and can be raised at any time.
 

 Furthermore, Husband's requested findings and statements at the hearing show that he was well aware that the trial court had decided to vacate the divorce judgment and would be entering an order accordingly when he arranged to have a prenuptial agreement
 
 *901
 
 prepared and signed immediately and got married only five days later. His calculated actions, which were obviously intended to eliminate Wife's equitable distribution claim, created the predicament of bigamy that he now claims to face, and the trial court rightfully concluded that "extraordinary circumstances exist" in this case and that vacating the divorce decree was an action "necessary to accomplish justice."
 
 Trivette
 
 ,
 
 162 N.C.App. at 63
 
 ,
 
 590 S.E.2d at 304
 
 . Since we have concluded the trial court was well within its discretion to enter its decree setting aside the divorce judgment with Rule 60(b), the trial court had subject matter jurisdiction over Wife's equitable distribution counterclaim as stated in her amended answer to the divorce complaint.
 

 II. In-Kind Distribution and Distributive Awards
 

 Next, Husband argues that the trial court erred by failing to provide for an in-kind distribution and ordering the sale of real property regarding the marital home and the Virginia property. We agree.
 

 When the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. While findings of fact by the trial court in a non-jury case are conclusive on appeal if there is evidence to
 
 *101
 
 support those findings, conclusions of law are reviewable
 
 de novo
 
 . Our review of an equitable distribution order is limited to determining whether the trial court abused its discretion in distributing the parties' marital property. Accordingly, the findings of fact are conclusive if they are supported by any competent evidence from the record.
 

 Robbins v. Robbins
 
 ,
 
 240 N.C.App. 386
 
 ,
 
 770 S.E.2d 723
 
 , 728,
 
 disc. review denied
 
 , --- N.C. ----,
 
 775 S.E.2d 858
 
 (2015) (citations, quotation marks, and brackets omitted).
 

 In this case, the trial court's equitable distribution order contained the following findings of fact regarding the sale of the marital home and the Virginia Property and the payment of a distributive award:
 

 10. As of the date of separation and presently, the parties were and are the joint owners of real property located at 566 Melvin Clark Road, Siler City, North Carolina and more fully described in the Warranty Deed filed at Book 1456, Page 1104 of the Chatham County Registry on April 30, 2009 [the "marital home"]. Prior to the date of separation, this had been the parties' marital residence. The [marital home] is marital property.
 

 11. The [marital home] was unencumbered as of the date of separation and currently. The parties stipulated that the fair market value of the [marital home] as of the date of separation and currently is $250,173. Both [Husband] and [Wife] testified that they did not want to be distributed the [marital home]. [Husband] testified that the property should be distributed to [Wife] and [Wife] requested that the property be sold.
 

 12. This Court finds that the [marital home] should be sold with the help of Elizabeth Anderson of Caldwell Banker in Pittsboro, North Carolina, and the net proceeds divided equally between the parties at closing. The [marital home] should be listed for sale, as is, with Ms. Anderson within sixty (60) days after the entry of this Order at a price agreed upon by the parties, or in the event the parties are unable to agree, a price recommended by the realtor. The listing agreement should be for a term of six months and Ms. Anderson should be entitled to receive her standard commission of six percent. In the event the [marital home] has not been sold prior to the expiration of the listing
 
 *102
 
 agreement, the parties should return to Court to determine if the listing agreement should be extended or if the property should be sold by auction[.]
 

 ....
 

 14. From the date of separation through November of 2013, Defendant resided in the [marital home] and enjoyed the benefits associated with the said residence. From the date of separation through the date of trial, [Wife] also testified that she had paid $18,011 for property taxes, materials, labor, insurance and utilities to maintain and preserve the property. After November
 
 *902
 
 of 2013, neither party has resided in the residence[.]
 

 ....
 

 16. As of the date of separation and presently, the parties were and are the joint owners of 7 acres of unimproved land located in Augusta County, Virginia (the "Virginia Property"). The Virginia Property is marital property[.] The Virginia Property was unencumbered as of the date of separation and currently. The parties stipulated that the fair market value of the Virginia Property as of the date of separation and currently is $87,200. Both [Husband] and [Wife] testified that they did not want to be distributed the Virginia Property[.] [Wife] requested that the property be sold.
 

 17. This Court finds that the Virginia Property should be sold with the help of a real estate agent selected by [Wife] and the net proceeds divided equally between the parties at closing. The Virginia Property should be listed for sale, as is, within sixty (60) days after the entry of this Order at a price agreed upon by the parties, or in the event the parties are unable to agree, a price recommended by the realtor. The listing agreement should be for a term of six months and the realtor should receive a standard commission for the sale of land[.] In the event the Virginia Property has not been sold prior to the expiration of the listing agreement, the parties should return to Court to determine if the listing agreement should be extended or if the property should be sold by auction.
 

 ....
 

 *103
 
 28[.] During their marriage, both [Husband] and [Wife] were federal employees and received retirement benefits under the Civil Service Retirement System ("CSRS"). The CSRS is administered by the United States Office of Personnel Management ("OPM"). Prior to the date of separation, [Husband] and [Wife] retired and each of them began receiving monthly annuity payments from OPM through the CSRS.
 

 ....
 

 32. Based upon a valuation performed by Williams Overman Pierce, LLP, the total value of [Husband's] CSRS defined benefit plan as of the date of separation was $1,354,235 with a survivor benefit awarded to [Wife]. The value of the marital portion of said benefit plan as of the date of separation was $1,014,655. The balance of the benefit plan valued at $339,580 was [Husband's] separate property[.]
 

 33. Based upon a valuation performed by Williams Overman Pierce, LLP, the total value of [Wife's] CSRS defined benefit plan as of the date of separation was $11,004,191 [sic]
 
 [8]
 
 with a survivor benefit awarded to [Husband]. The value of the marital portion of said benefit plan as of the date of separation was $797,026. The balance of the benefit plan valued at $207,165 was [Wife's] separate property[.]
 

 34. On March 19, 2015, this Court entered two separate CSRS COAP's equally dividing the marital portion of the parties' annuity payments from OPM through the CSRS, and awarding each party a former spouse survivor annuity under CSRS in the same amount to which the party would have been entitled if the divorce had not occurred[.]
 

 ....
 

 36. The parties stipulated that from the date of separation through September 30, 2014, [Husband] owed [Wife] the sum of [$13,009.50] to compensate her for the difference in the annuity payments the parties had received since the date of separation. This Court finds that [Husband] should
 
 *104
 
 and has the ability to pay the sum of [$13,009.50] to [Wife] within thirty (30) days after the entry of this Order.
 

 ....
 

 47. Based upon the spreadsheet hereto attached as
 
 Exhibit 4
 
 , the amount of the distributive award [Husband] should pay to [Wife] to achieve an equal division of the marital and divisible property and debt is $13,462.
 

 On the Spreadsheet attached as Exhibit 4 of the order, the trial court did not list a
 
 *903
 
 value for the marital home or the Virginia property but instead listed "50% of Net Proceeds" in the column for each party. Likewise, instead of finding a value for the parties' retirement plans, the trial court stated "Equal Division-CSRS COAP" in the column for each party. Thus, the total value of the marital estate listed on the spreadsheet includes only those items of property which were assigned a value on that spreadsheet, so that total value excludes the four largest marital assets. The trial court determined the distributive award based upon that partial "total" value of the marital estate.
 

 In addition, the trial court made the following conclusions of law:
 

 9. An in-kind distribution of the marital and divisible property and debt is not practical given that neither party desires to be distributed certain assets and the assets are capable of being sold in the marketplace with the assistance of qualified realtors.
 

 10. The presumption of an in-kind distribution has been rebutted for the reasons set forth herein.
 

 11. The payment of a distributive award by [Husband] to [Wife] is fair and reasonable, and [Husband] has the ability to pay the distributive award ordered herein[.]
 

 "Under [
 
 N.C. Gen. Stat. § 50-20
 
 (c) ], equitable distribution is a three-step process; the trial court must (1) determine what is marital and divisible property; (2) find the net value of the property; and (3) make an equitable distribution of that property."
 
 Robinson v. Robinson
 
 ,
 
 210 N.C.App. 319
 
 , 322,
 
 707 S.E.2d 785
 
 , 789 (2011) (citation, quotation marks, and brackets omitted). In order to properly conduct this process, it is clear that the second step is for the trial court to actually place a value on the property to be distributed.
 
 See, e.g.
 
 ,
 
 Thomas v. Thomas
 
 ,
 
 102 N.C.App. 127
 
 , 129,
 
 401 S.E.2d 367
 
 , 368 (1991) ("By appointing commissioners to sell the property and divide the net proceeds after paying expenses and
 
 *105
 
 costs, the trial judge did not satisfy the requirement of the statute that the judge must place a value on the property.");
 
 Soares v. Soares
 
 ,
 
 86 N.C.App. 369
 
 , 371-72,
 
 357 S.E.2d 418
 
 , 419 (1987) (holding trial court erred by ordering sale of marital home for not less than the appraised value without first determining its value.).
 

 The trial court's role is to classify, value, and distribute property, not simply to order that it be sold. In doing so, "the trial court must consider the property's market value, if any, less the amount of any encumbrance serving to offset or reduce the market value."
 
 Robinson
 
 ,
 
 210 N.C.App. at 323
 
 ,
 
 707 S.E.2d at 789
 
 . Here, the parties had actually stipulated to the values of the marital home and the Virginia Property as of the date of separation and neither was encumbered by a mortgage. The trial court found that neither party wanted the real property, and the record reflects that Wife wanted the property to be sold.
 
 [9]
 
 We understand that neither party
 
 wanted
 
 the real properties to be distributed to them for various reasons, but they also had not agreed to sell the properties. Sometimes the law does not allow the parties to get what they want; but sometimes they might find that that they get what they need.
 
 [10]
 
 This is one of those times. What they need-and what the law requires-is an order classifying, valuing, and distributing all of the martial and divisible property.
 
 See
 

 Fitzgerald v. Fitzgerald
 
 ,
 
 161 N.C.App. 414
 
 , 418,
 
 588 S.E.2d 517
 
 , 520 (2003) ("In making an equitable distribution of marital assets, the trial court is required to undertake a three-step process: (1) to determine which property is marital property, (2) to calculate the net value of the property, fair market value less encumbrances, and (3) to distribute the property in an equitable manner." (Citation and quotation marks omitted)). The trial court must value and distribute each parcel of real property to a party, and a distributive award may be needed to equalize the division or to make the distribution equitable. Then, the party who receives distribution of the real property is free to keep it or sell it. We therefore reverse and remand for the trial court to value each marital and
 
 *904
 
 divisible asset-including the real property and the retirement plans-as of the date of separation and the date of division, and to determine the total net value of the entire marital estate, whether an equal division will be equitable, and if any distributive award will be needed, and to enter an order accordingly.
 
 *106
 
 III. Distributional Factors
 

 Next, Husband argues that the trial court erred by failing to make findings and give proper consideration to his evidence of distributional factors. Wife seems to agree, noting that she "is not in disagreement with [Husband] that the Court order of November 17, 2015 lacks Findings of Facts and Conclusions of Law regarding the distributive award."
 
 [11]
 
 (Emphasis omitted).
 

 Pursuant to [
 
 N.C. Gen. Stat. § 50-20
 
 (c) ], there shall be an equal division of marital and divisible property unless the court determines that an equal division is not equitable. If the court determines that an equal division is not equitable, the court shall divide the marital property and divisible property equitably. When making an unequal distribution, the trial court must consider the factors enumerated in G.S. § 50-20(c) and must make findings which indicate that it has done so. It is not necessary that the findings recite in detail the evidence considered but they must include the ultimate facts considered by the trial court.
 

 Britt v. Britt
 
 ,
 
 168 N.C.App. 198
 
 , 204,
 
 606 S.E.2d 910
 
 , 914 (2005) (citations, quotation marks, brackets, and ellipses omitted). "[W]hen evidence of a particular distributional factor is introduced, the court must consider the factor and make an appropriate finding of fact with regard to it."
 
 Fox v. Fox
 
 ,
 
 114 N.C.App. 125
 
 , 135,
 
 441 S.E.2d 613
 
 , 619 (1994) ;
 
 see also
 

 Warren v. Warren
 
 ,
 
 175 N.C.App. 509
 
 , 518-19,
 
 623 S.E.2d 800
 
 , 806 (2006) (remanded for further findings of fact where evidence offered relating to
 
 N.C. Gen. Stat. § 50-20
 
 (c)(9), (11a), and (12) but court made no findings regarding those factors). The requirement to make such findings regarding the factors for which evidence is presented "exists regardless whether the trial court ultimately decides to divide the property equally or unequally."
 
 Warren
 
 ,
 
 175 N.C.App. at 518
 
 ,
 
 623 S.E.2d at 806
 
 .
 

 *107
 
 Furthermore,
 

 N.C. Gen. Stat. § 50-20
 
 (e) (2013) creates a presumption that an in-kind distribution of marital or divisible property is equitable, but permits a distributive award 'to facilitate, effectuate, or supplement' the distribution. If the trial court determines that the presumption of an in-kind distribution has been rebutted, it must make findings of fact and conclusions of law in support of that determination. Should a party successfully rebut the equity of an in-kind distribution, a trial court may order a distributive award pursuant to
 
 N.C. Gen. Stat. § 50-20
 
 (c) (2013). This statute sets forth distributional factors that the trial court must consider before ordering a distributive award. One of those factors is the liquid or nonliquid character of all marital property and divisible property. In other words, the trial court is required to make findings as to whether the defendant has sufficient liquid assets from which he can make the distributive award payment.
 

 Sauls v. Sauls
 
 ,
 
 236 N.C.App. 371
 
 , 375,
 
 763 S.E.2d 328
 
 , 331 (2014) (citations, quotation marks, brackets, and italics omitted).
 

 At trial, the court and Wife's counsel stated the following regarding the distributional factors evidence presented:
 

 THE COURT: Heard a lot of evidence about distributional factors along the way.
 

 [Wife's Counsel]: Yes, we have.
 

 THE COURT: And the court order has-the Court of Appeals says that the court order has to address each distributional factor in which any evidence was presented and make findings of fact about
 
 *905
 
 that and then make conclusions about the meaning of all the distributional factors.
 
 So someone's going to have to identify every distributional factor we've talked about, not just the one's we're about to talk about
 
 . Okay?
 

 (Emphasis added).
 

 The trial court made the following finding-perhaps more properly characterized as a conclusion of law-regarding distribution in its equitable distribution order:
 

 *108
 
 46. Based upon the above findings and after considering the distributional factors raised by the parties at trial, this Court finds that an equal division of the marital and divisible property and debt is equitable. Based upon the in-kind division of the marital and divisible property set forth above and the equal division of the proceeds from the sale of the [marital home], the Virginia Property and the sale of the tangible personal property, this Court finds it necessary to order a distributive award for [Husband] to pay to [Wife] in order to equitably divide the parties' marital and divisible property.
 

 Thus, while the court noted that it "consider[ed] the distributional factors" and concluded that an equal division was equitable, the order does not include sufficient findings about the distributional factors for us to review this conclusion. In addition, the trial court concluded that a distributive award was necessary to equalize the division of the marital and divisible assets of the parties, although that conclusion was based in part upon its erroneous decree that the real properties be sold instead of distributing them. The trial court then concluded:
 

 6. An equal division of the marital and divisible property and debts is equitable.
 

 ....
 

 11. The payment of a distributive award by [Husband] to [Wife] is fair and reasonable, and [Husband] has the ability to pay the distributive award ordered herein[.]
 

 The order did not identify the distributional factors "we're about to talk about[,]" much less "every distributional factor we've talked about" during the trial, as the trial court correctly noted should be addressed by the order. Those distributional factors are listed in
 
 N.C. Gen. Stat. § 50-20
 
 (c) (2015). Evidence was presented about several of these factors, most notably the liquidity of the marital estate (
 
 N.C. Gen. Stat. § 50-20
 
 (c)(9) ); Wife's early retirement (
 
 N.C. Gen. Stat. § 50-20
 
 (c)(12) (catchall provision)); the physical health of the parties (
 
 N.C. Gen. Stat. § 50-20
 
 (c)(3) ); and the "[a]cts of either party to maintain, preserve, develop, or expand; or to waste, neglect, devalue or convert the marital property ... during the period after separation of the parties and before the time of distribution" (
 
 N.C. Gen. Stat. § 50-20
 
 (c)(11a) ); but the trial court erred by failing to make any findings regarding that evidence.
 
 See
 

 Warren
 
 ,
 
 175 N.C.App. at 518
 
 ,
 
 623 S.E.2d at 806
 
 . On remand, the trial court must make findings regarding all distributional factors for
 
 *109
 
 which evidence was presented and determine in its discretion whether an equal division is equitable, since the trial court's analysis of this issue may change on remand considering the distribution instead of sale of the real property, as well as other matters addressed on remand.
 
 [12]
 

 IV. Timber Agreement
 

 Husband next argues that the trial court's valuation of the Timber Agreement, which was an agreement between plaintiff and his cousin involving timber on land in Pennsylvania that the trial court classified as marital property, was not supported by competent evidence, and Wife seems to agree.
 
 [13]
 

 *906
 
 Husband argues that "[i]t is completely unknown as to what the status or condition of that timber will be beginning in January 2018, when it will actually be cut or valued and [Wife]'s testimony as to the value, which was the only information before the trial court, was completely speculative."
 

 The trial court made the following finding about the Timber Agreement:
 

 39[.] As of the date of separation [Husband] and Randy A. Winkleman were parties to a Timber Agreement dated November 20, 2009, which entitled [Husband] to receive fifty percent of the proceeds from timbering certain property located in ... Pennsylvania. The Timber Agreement is marital property, and the value of the Timber Agreement to the parties as of the date of separation and currently is $5,000.
 

 The court then concluded that Husband "shall be distributed as his sole and separate property the Timber Agreement and all benefits associated therewith."
 

 *110
 
 Husband is correct that the evidence regarding the Timber Agreement was speculative, at best. The timber in question was on land which the parties had owned during the marriage, but Husband had sold in 2009 to his cousin. Wife testified that she was unaware of the sale until later and that it was done without her signature. Neither party knew exactly what sort of timber was there or how much, although Wife estimated the value to be $10,000.00. The Timber Agreement itself was quite unusual, as noted by the trial court:
 

 THE COURT: "If the buyer should endure any financial hardship, the buyer, Randy Winkleman, divorce, bankruptcy, foreclosure, the buyer shall initiate the sale as soon as possible to ensure the seller will receive any proceeds owed to him under this agreement." That's an odd provision.
 

 [Husband's trial counsel]: It's a very odd contract.
 

 THE COURT: Uh-huh (yes).
 

 [Wife]: Well, apparently when Mr. Miller bought this from my in-laws the same timber agreement existed between them and his parents.
 

 THE COURT: I wonder if this is recorded anywhere in the Register of Deeds office.
 

 [Wife]: There's no indication that there is.
 

 In any event, the future value of timber, planted during marriage on marital property but which will not mature until some years in the future, is too speculative to be considered a vested property right for purposes of equitable distribution.
 
 See
 

 Cobb v. Cobb
 
 ,
 
 107 N.C.App. 382
 
 , 386,
 
 420 S.E.2d 212
 
 , 214 (1992) ("In the case at bar, we find that the future value of the timber is more analogous to an option which may be lost as a result of future events.... Appellee may never realize the future value of the timber if, for example, the trees are destroyed by fire or insects, or if appellee decides to sell the property or to not cut the trees at all."). This Court concluded in
 
 Cobb
 
 that the future value of timber that would not mature until many years later should not be considered marital property or a distributional factor, since "characterizing growing trees as a vested property right is far too speculative," and "[an] equitable distribution trial would become overwhelmingly complicated."
 
 Id.
 
 at 386, 387,
 
 420 S.E.2d at 214, 215
 
 . We therefore conclude that the valuation of the Timber Agreement in this case at $5,000.00, which involved
 
 *111
 
 timber of an unknown variety, age, and quantity, was not supported by competent evidence.
 

 V. Classification of 2011 Suburban and Debt as Separate Property
 

 Finally, Husband argues that the trial court erred in classifying the 2011 Suburban and debt secured by it as his separate property and debt. Specifically, Husband contends that "[t]he record does not support the Court's finding that the vehicle was not acquired for the joint benefit of the parties and the judgment contains no findings or conclusions indicating that the Defendant rebutted the marital property presumption[.]" Husband also argues that the court below erred because it "apparently believ[ed] that property acquired prior to separation, but after the filing of an action for divorce from bed and board falls outside of the marital property definition."
 

 Here, the trial court valued Husband's 2011 Suburban at $49,000.00 with a secured debt of $64,638.82. The trial court classified it as Husband's separate property and debt.
 

 *907
 
 The court's findings include the fact that the Suburban and debt was "acquired/incurred by [Husband] after [Wife] filed the 2011 Proceeding [for divorce from bed and board] and were not acquired/incurred for the joint benefit of the parties."
 

 Although the trial court noted that the Suburban was acquired after Wife filed her claim for divorce from bed and board, the relevant date for classification of property for equitable distribution purposes is the date of separation.
 
 See
 

 N.C. Gen. Stat. § 50-20
 
 (b)(1) (2015) (" 'Marital property' means all real and personal property acquired by either spouse or both spouses during the course of the marriage and
 
 before the date of separation of the parties
 
 , and presently owned, except property determined to be separate property or divisible property[.]") (emphasis added). Furthermore, "[t]he spouse claiming that the property is separate bears the burden of proof, as under
 
 N.C. Gen. Stat. § 50-20
 
 (b)(1), it is presumed that all property acquired after the date of marriage and before the date of separation is marital property[.]"
 
 Allen v. Allen
 
 ,
 
 168 N.C.App. 368
 
 , 374,
 
 607 S.E.2d 331
 
 , 335 (2005) (quotation marks omitted). The presumption may, however, "be rebutted by the greater weight of the evidence."
 
 N.C. Gen. Stat. § 50-20
 
 (b)(1).
 

 Here, at the equitable distribution hearing, Husband testified that the Suburban was purchased on or about 12 November 2011 while the parties still resided together and that he did not believe the marriage was over when he purchased the vehicle. The date of separation was 21 March 2012. Thus, the Suburban was purchased before the parties were separated and is presumed to be marital property. Although the
 
 *112
 
 trial court also heard testimony that Husband purchased the vehicle on his own and financed the vehicle himself, that Wife never drove the vehicle, and that Husband put all 33,000 miles on it, the court made no findings indicating that Wife rebutted the marital property presumption. There was no evidence that Husband purchased the Suburban with separate funds. Based upon the record, it appears that the Suburban and its associated debt should have been classified as marital. On remand, the trial court must clearly make findings to support its classification, valuation, and distribution of the Suburban and its debt. But we note that on remand, the trial court may, in its discretion, also consider the circumstances of Husband's purchase of the Suburban and associated debt he incurred as a factor favoring an unequal distribution in favor of Wife, thus accomplishing the same result in the actual distribution. In other words, the trial court should do the "equity" in equitable distribution in the distribution phase of the order, not in the classification of the property or debt as marital or separate.
 

 Conclusion
 

 If ever there was a case where it was proper for the trial court to use the "grand reservoir of equitable power to do justice in a particular case" under Rule 60(b), this is it.
 
 Jim Walter Homes, Inc.
 
 ,
 
 28 N.C.App. at 712
 
 ,
 
 222 S.E.2d at 708
 
 (citation and quotation marks omitted). We commend the trial court's extensive and detailed orders addressing the facts and equities of this very unusual situation. The trial court acted well within its discretion when it entered a decree vacating the divorce decree under Rule 60(b) and thus had jurisdiction over Wife's equitable distribution claim. We also appreciate the complexity of the case and the difficulty of dealing with all of the issues raised over several years of litigation. But for the reasons noted above, we must reverse the equitable distribution order and remand for the trial court to enter a new equitable distribution order which addresses the substantive issues in a manner consistent with this opinion. On remand, the trial court may in its discretion receive additional evidence limited to the issues of classification, valuation and distribution of property as necessary for preparation of a new equitable distribution order.
 

 AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
 

 Judges McCULLOUGH and ZACHARY concur.
 

 [2]
 

 Only the first page of this memorandum of order is in the record; the second page where the signatures of the parties and judge would normally appear is not. We note this problem mainly because the last page is missing from several of the orders in the record, but fortunately, none of those orders are directly material to the legal issues presented. We are also not positive exactly what "matter" was continued until 23 January, but it was probably the divorce from bed and board hearing.
 

 [3]
 

 Again, the signature page of this consent order is not in our record.
 

 [4]
 

 File No. 11 CVD 701 is Wife's claim for divorce from bed and board and equitable distribution; File No. 12 CVD 288 is Wife's claim for a domestic violence protective order which was filed on 21 March 2012. Husband moved out of the martial home as a result of the
 
 ex parte
 
 domestic violence protective order entered on 21 March 2012, which was a few days earlier than he would have been required to move based upon the order for divorce from bed and board.
 

 [5]
 

 Since Husband appealed from the trial court's order dismissing his motion in 11 CVD 701, his allegation that vacating the divorce judgment would be "unnecessary" and Wife would not be prejudiced seems disingenuous at best.
 

 [6]
 

 October 23, 2013 was a Wednesday, and Husband was remarried on the following Monday, 28 October 2013, so they got the prenuptial agreement drafted and executed in just two business days.
 

 [7]
 

 The order in our record is file stamped but not signed by the trial court.
 

 [8]
 

 We note this clerical error to ensure it is not repeated in the order entered after remand, as the marital and separate portions of Wife's benefit plan (as stated in the same finding) add up to $1,004,191.00,
 
 not
 
 $11,004,191.00.
 

 [9]
 

 In his 12 June 2012 motion, Husband had requested that the marital home be sold, but by the time of trial, he no longer requested sale.
 

 [10]
 

 With apologies to The Rolling Stones. Jagger, Mick and Richards, Keith. "You Can't Always Get What You Want." The Rolling Stones, Let It Bleed. (London Records 1969).
 

 [11]
 

 Despite this statement, Wife's Reply brief stresses that her Appellee brief "does not agree with the Appellant's attorney position." Her Appellee brief also argues that the trial court "offered an explanation" of why it ordered sale of the real property and that the court considered Wife's health and age in that she was "physically incapable of taking care of ... approximately 15 acres" while Husband is "in a much better position physically to care for" the real property. According to the transcript, the trial court did discuss this rationale, but the order on appeal did not make these findings, and as discussed above, ordering that the real property be sold is not a distribution.
 

 [12]
 

 In a related argument, Husband contends that the trial court erred by concluding that he had the ability to pay 50% of the costs to maintain the real property in addition to payment of the distributive awards within 30 days of entry of the order. We will not address this issue in detail since the new order on remand will address a new distribution of the real property and other related issues such as distributional factors including "[a]cts of either party to maintain, preserve, develop, or expand; or to waste, neglect, devalue or convert the marital property ... during the period after separation of the parties and before the time of distribution."
 
 N.C. Gen. Stat. § 50-20
 
 (c)(11a).
 

 [13]
 

 Again, in her reply brief, Wife claims that she does not agree with any of Husband's arguments on appeal. But in her Appellee brief, as to this issue she stated, "The Appellee concurs with the Appellant's attorney. There is no creditable [sic] evidence before the Court."